## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### DORRIER AND ALS. v. MASTERS AND ALS.

JUNE 16th, 1887.

*Absent*—LEWIS, P., and LACY, J.

1. FOREIGN ATTACHMENTS— *Levy— Lien— Seizure—Bond.*—Attachment
   may be levied on any visible and tangible effects of non-resident
   debtor in his actual or constructive possession, in the common-law
   mode, as in the case of an execution.   If those effects, whether visible
   and tangible or not, are in a third person's possession, they may be
   sufficiently levied on by delivering a copy of the attachment to such
   person.   But they cannot be seized and taken possession of, unless the
   creditor has given a bond with security in a penalty at least double the
   amount sued for, the giving of which bond is optional with the cred-
   itor, who acquires a lien by the levy without the seizure.   Code 1873,
   ch. 148, §§ 7 and 8.

2. IDEM— *Common-law levy.*—To constitute an effectual levy, it is not
   essential that the officer make an actual seizure.   If he have the goods
   in his view and power, and note on the writ the fact of his levy
   thereon, this will in general suffice.   *Bullitt's Ex'ors* v. *Winstons*, 1
   Munf. 270.

Argued at Richmond.   Decided at Wytheville.

Error to judgment of the circuit court of the city of
Richmond, rendered June 6th, 1885, in an action at law by
attachment, by F. M. Masters, S. Groves, J. B. Williams and
S. D. Williams against Josiah Harris, a non-resident, to
recover $5,000 damages for breach of contract.   During the
progress of the action a controversy arose between the
plaintiffs and William Dorrier and other attaching credit-

ors of Harris as to the priorities of their several levies under Code 1873, ch. 148, § 25, and the decision was adverse to Dorrier and others, and they obtained a writ of error to this court.   Opinion states the case.

*Thomas S. Martin* and *Sol. Cutchins*, for the plaintiffs in error.

*Jackson Guy* and *Guy & Gilliam*, for the defendants in error.

RICHARDSON, J., delivered the opinion of the court.

This action was brought on the twentieth day of September, 1884.   On the same day the plaintiffs in the action sued out an attachment, under the first section of chapter 148 of the Code of 1873, against the estate of the said Josiah Harris, which went into the hands of the sheriff of the city of Richmond, at 11 o'clock A. M. on said twentieth day of September, 1884.   The plaintiffs did not give the bond provided for by the eighth section of said chapter, so as to authorize the seizure of any estate of the defendant levied on.   On said attachment the sheriff made return as follows, to-wit:

"Executed September 20th, 1884, on Norvell, Leake & Co., by delivering to —— Norvell a copy of the within attachment, and on Decatur Axtell, receiver of the R. & A. Railroad Company, September 22d, 1884, by delivering to him a copy of the within at 10 o'clock A. M.   Said Axtell is a resident of the city of Richmond, in which this process was executed.

"P. P. WINSTON, D. S., &c."

On said attachment the sheriff made this further return:

"Executed in the city of Richmond, September 20th, 1884, between the hours of 11 and 12 o'clock, by delivering to R. B. Snead, treasurer of the Richmond and Alleghany Railroad Company, a copy of the within attachment, he being a resident of said city, and on John Garrett, cashier of the Chesapeake and Ohio Railway, a copy of the within attachment. The principal offices of said corporations are located in the city of Richmond. And executed, the same day at 5 o'clock P. M., by delivering to Jackson Ragland a copy of the within. I also levied this attachment, between 11 and 12 o'clock A. M. the same day, on a large lot of hoop-poles found on a slip of land between the dock and the river, near the ship locks. I did not take the property in possession, as no bond was given for that purpose. The presidents of the R. & A. Railroad Company and the C. & O. Railway Company are not in the city of Richmond.

" LEWIS P. WINSTON, Sheriff, &c."

On the same day, September 20th, 1884, William Dorrier instituted an action at law in the circuit court of the city of Richmond against said Josiah Harris, to recover $1,000, with interest from June 2d, 1882, subject to a credit of $200 as of August 14th, 1883; and in said action the plaintiff also sued out an attachment against the estate of said defendant, Josiah Harris, which went into the hands of said sheriff of the city of Richmond at 1 o'clock P. M. on the said twentieth day of September, 1884, on which return was made as follows, to-wit:

1st. " Levied, September 20th, 1884, on a large quantity of hoop-poles found on a strip of land between the dock and river, near the ship locks, at half-past 1 o'clock P. M.

" LEWIS P. WINSTON, S. R. C."

And this further return was endorsed on said attachment:

"Executed in the city of Richmond, September 20th, 1884, on John Garrett, cashier of the Chesapeake and Ohio Railway Company, about half-past 1 o'clock P. M., by delivering to him a copy of the within writ; and on the same day, at 5 o'clock P. M., I delivered to Jackson Ragland a copy of the within; and on the twenty-second day of the same month, in the city of Richmond, at 10 o'clock A. M., I delivered to Decatur Axtell a copy of the within attachment. The president of the Chesapeake and Ohio Railway was absent from the city of Richmond at the time of service on Garrett, cashier.

"P. P. WINSTON, D. S., &c."

On the 23d day of September, 1884, Charles J. Johnson, D. H. Pitts and William Dorrier instituted a chancery suit in the chancery court of the city of Richmond against the said Josiah Harris, to recover of him a large balance said to be due them on settlement of a partnership account; and in said chancery suit, on the same day, issued an attachment against the estate of said Josiah Harris, on which said sheriff of the city of Richmond made return as follows, to-wit, first:

"Executed September 23d, 1884, in the city of Richmond, by delivering to John Garrett, cashier of the Chesapeake and Ohio Railway Company, a copy of the within. President no inhabitant. The principal office of said company is located in the city of Richmond. And on Decatur Axtell, Norvell, Leake & Co., and Curtis & Parker, by delivering to each of them a copy of the within. Jackson Ragland not found.      LEWIS P. WINSTON, Sheriff, &c."

2d. "Executed on Lewis P. Winston, sheriff city of Richmond, September 23d, 1884, by delivering to him a copy of this writ.          P. P. WINSTON, D. S., &c."

The facts are substantially these: As to the hoop-poles

levied on at the wharves of the C. & O. Railway Company, the plaintiffs in error concede the prior right of the defendants in error, Masters and others, as their attachment was first served on that company, which had possession of the hoop-poles at its wharves. The controversy is as to the hoop-poles belonging to the debtor, Josiah Harris, individually, which were piled on the strip of land, between the dock and river, near the ship-locks, belonging to the Richmond and Alleghany R. R. Co., the said company, however, disclaiming the possession or control of said hoop-poles. These hoop-poles have been sold, and the proceeds thereof, amounting to $2,460.67, which is subject to the order of the court, is the subject of controversy here. In the said action at law of F. M. Masters and others, they recovered a judgment against the attachment debtor, Josiah Harris, for $5,250, with interest on $5,000, part thereof, from September 18th, 1884, subject to a credit of $1,250, as of May 1st, 1885.

In the said action at law of William Dorrier, he recovered a judgment against said Josiah Harris for $1,000, with interest from June 2d, 1882, and costs, subject to a credit of $200, as of August 14th, 1883.

The said chancery suit of C. J. Johnson and others against Josiah Harris, being yet undetermined, it had not been ascertained what amount, if anything, was due to the plaintiffs from the defendant therein, on account of the partnership transactions between them. And attachments having issued in said two actions at law, and in said chancery suit, and the said attaching creditors, William Dorrier and others, and C. J. Johnson and others, having filed their petitions as aforesaid, contesting the validity of the lien asserted by the plaintiffs in said first named action at law of F. M. Masters and others against Josiah Harris, the said circuit court of Richmond, at the hearing, rendered judgment in favor of the validity of the attachment lien asserted

by F. M. Masters and others, and giving it priority over said other attachments, and directing the said fund to be paid accordingly. To said judgment William Dorrier and others obtained from one of the judges of this court a writ of error and *supersedeas*.

It is conceded on all hands that each of the attachments was regularly sued out. It is also conceded that the levy of the attachment of the defendants in error was first made; but it is insisted by the plaintiffs in error that that levy was invalid, and that no lien was acquired thereby. Hence the controversy grows out of the manner of executing the attachment, of the defendants in error, F. M. Masters and others. When these attachments were sued out, and for some time prior thereto, the defendant, Josiah Harris, was a non-resident of the State of Virginia, and was absent therefrom.

The hoop-poles, the proceeds of which is the subject of controversy, were piled on an open strip of land belonging to the Richmond and Alleghany R. R. Co. It seems that these hoop-poles had been transported by the said railway company, for said Harris, along its line to the point where they were piled when levied on. There is no question that these poles were the individual property of said Harris. There were several piles of hoop-poles at the same place, all of which the attachment of the defendants in error was levied on, some of which belonged to other parties, of which fact the officer making the levy had no knowledge. But the question of part ownership by others is out of the case, as the parties interested have adjusted that matter to their satisfaction, leaving the proceeds of the poles belonging to Harris individually as the sole subject of controversy here. As to the hoop-poles, the proceeds of which constitute the subject of controversy in this suit, when Harris left the State of Virginia, he left no one in the possession of said property.

There is no conflict of evidence; and from the facts certified, it appears that on the twentieth day of September, 1884, between 11 and 12 o'clock of that day, the sheriff of Richmond city, who had the attachment of Masters and others to be executed, served a copy thereof on R. B. Snead, treasurer of the Richmond and Alleghany R. R. Co., and was informed by said Snead that the defendant, Harris, had hoop-poles piled on the said strip of land; that said sheriff went with said attachment to a point distant about three or four squares from where said poles were piled, from which point he could see them, although separated from them by said distance and by the dock; that said poles were in several piles, not exceeding four; that he, the sheriff, did not know and made no inquiry as to which of said piles of hoop-poles belonged to Josiah Harris, but he levied on all he saw; but at the time of making the levy he did not know that any of them belonged to any one but Josiah Harris and Josiah Harris & Co.; that he gave no notice to any one of his levy, and made no public proclamation thereof, as he saw no one to whom to make the proclamation, either where he was, or at the hoop-poles; that he in no way identified or separated the hoop-poles of Josiah Harris, on which he meant to levy, from the hoop-poles of the other persons piled on the same ground; that he did not take any actual possession or control of the hoop-poles under the attachment of Masters and others, because no bond had been given; that the only act he did was to go to the aforesaid point, look at the said hoop-poles, and endorse the levy as set out in his return on the attachment; that there was no impediment or difficulty in crossing the dock or reaching the poles, or opposition to his taking actual possession of them, and the only reason he did not do so was because the plaintiffs had not given bond. That when, on the same day at 1:30 o'clock, he, the said sheriff, levied the attachment of William

Dorrier, the said Dorrier went with him to the said strip of land and designated and pointed out the hoop-poles which belonged to the said Josiah Harris, and they were then levied on and taken in actual charge and custody of the sheriff by virtue of said attachment, in which bond had been given. It also appears that at the time of the levy of the attachment of Masters and others, at between 11 and 12 o'clock of the same day, there were other piles of hoop-poles on said strip of land besides those belonging to Josiah Harris, and levied on as aforesaid, to-wit: hoop-poles belonging to Charles J. Johnson individually, hoop-poles belonging to Pitts and Dorrier, and hoop-poles belonging to Josiah Harris & Co.; and that the said sheriff did not know which of said piles of hoop-poles belonged to said Josiah Harris until they were pointed out to him by Wm. Dorrier, at 1:30 o'clock P. M. on said twentieth of September, 1884.

Under this state of facts, it is contended on behalf of the plaintiffs in error that, inasmuch as the attachment debtor, Harris, was a non-resident and absent from the State at the time of the levy of these attachments, and inasmuch as the hoop-poles attempted to be levied on under the attachment of Masters and others were not in the possession of any third party upon whom service by copy would have been effectual, the pretended levy of that attachment is invalid, because no bond was given authorizing the sheriff to take actual possession of the property, without which, it is insisted, no valid levy, under such circumstances, can be made under our attachment law. And, therefore, it is further insisted, that the subsequently levied attachments of William Dorrier and others, in which bond was given, take precedence, in the order in which they were levied, over the attachment of Masters and others. After careful investigation, we are clearly of opinion that this contention on the part of the plaintiffs in error should not prevail.

As respects the questions here presented for decision, the attachment law of Virginia has never been construed by this court. We are, therefore, not only without the aid of any previous decision by this court, but in the widely dissimilar attachment laws of our sister States no case is found which covers the ground here presented. Therefore the case necessarily turns upon the proper construction of sections 7 and 8 of chapter 148, Code 1873. These two sections read:

"7th. Every such attachment (except where it is sued out specially against specific property) may be levied upon any estate, real or personal, of the defendant, or so much thereof as is sufficient to pay the amount for which it issues, and may be levied upon any estate of the defendant, whether the same be in the county or corporation where the suit is, or in any other, either by the officer of the county or corporation where the suit is brought, or by the officer of the county or corporation where the estate is. It shall be sufficiently levied in every case by a service of a copy of such attachment on such persons as may be designated by the plaintiff in writing, or be known to the officer to be in possession of effects of, or to be indebted to, the defendant.

"8th. But if the plaintiff shall, at the time of suing out such attachment, or afterwards, give bond with security, approved by the clerk or justice issuing the attachment, in a penalty of at least double the amount of the claim sworn to or sued for, with condition to pay all costs and damages which may be awarded against him, or sustained by any person, by reason of his suing out the attachment, the said officer shall take possession of the property specified in the attachment, or where no such property is specified, of any estate or effects of the defendant, or so much thereof as is sufficient to pay the plaintiff's claim. When such bond is given, the fact shall be endorsed on the

attachment, or certified by the clerk or justice to the officer, who shall return the said certificate with the attachment; and the bond, when taken by a justice, shall be returned by him to, and filed in, the clerk's office of the court to which the attachment is returnable."

In construing these sections two questions are presented:

1st. When there is no garnishee or third person owing debts to, or in the possession of property belonging to the debtor, but there is visible and tangible personal property of the debtor in his actual or constructive possession, can a valid levy of an attachment thereon be made without the attaching creditor giving bond, as prescribed by the eighth section of said chapter? and,

2d. If a valid levy can be thus made, was it accomplished by the defendants in error in this case?

Then, as to the question first above stated, it may be said that while said seventh section of chapter 148 prescribes the manner in which an attachment may be levied on effects of the defendant in the hands of third persons, and on real estate of the defendant, it does not, in *express terms*, indicate any mode of levy upon effects of the defendant, open and visible, but which are not in the possession of any third person, the defendant being a non-resident and absent from the State at the time of the levy.

This circumstance, however, can afford no just ground for the inference that visible, tangible and accessible property and effects of the defendant cannot, under the circumstances of this case, be levied on under said seventh section. It is the property, and not the person, of the defendant that the attachment operates upon when levied, or when the writ of attachment is *executed* according to law.

Though greater legislative precision in framing said seventh section would have been commendable, yet, in view of the fact that the ordinary mode of *levy* was, as in the case of an ordinary execution, thoroughly well understood

and practiced, there was no real necessity for prescribing the mode of levying an attachment on visible and tangible effects of a defendant, in his actual or constructive possession, and especially as the first part of said section provides, in the most comprehensive terms, that the attachment "may be levied upon *any estate* of the defendant." Not so, however, as respects the special provisions contained in in the second clause of said seventh section, which were intended to remedy the main evil aimed at by the legislature. These provisions were essential to the protection intended to be secured to the creditor against a non-resident debtor. Without them, in the case of effects of the defendant in the hands of third persons, there was no known mode of levy unless the officer could discover their whereabouts and gain access to them; and in the case of debts due the defendant from third persons, there was no known mode of levy whatever; and as to real estate, it was a very unusual subject of levy, and where it consisted of interests or estates not in possession, no mode of levy was prescribed; and hence the propriety, and indeed obvious necessity, in making these provisions. But in the case of visible, tangible effects of a defendant in his own possession, actual or constructive, the ordinary modes of levy were so well understood, and were so commonly practiced, that no special directions on the subject seemed necessary. And hence, in providing as it did, in the first part of said seventh section, that the attachment may be levied on *any estate* of the defendant, the legislature necessarily intended that an attachment, as to the visible, tangible effects of the defendant, in his actual or constructive possession, may be levied as an execution of *fi. fa.* is levied. This is not in terms expressed in said section, but when we look to the obvious legislative policy in giving the remedy by attachment, it is found to exist by necessary implication as clear and strong as if it were so expressed in terms.

If this be not so, then the legislature, in the case of an absent, non-resident debtor, deliberately designed to exempt from levy under this section all the open, visible property of the defendant, though of a tangible nature and in the defendant's actual or constructive possession, the very part of the defendant's estate that is usually looked to for the payment of his debts, because most accessible and commonly freer from complications with the claims of third persons, and may be sold and the proceeds applied with less trouble and expense to both debtor and creditor. It is inconceivable that the legislature could have intended, in the very act of providing what was intended to be not only a summary, but an easy and effectual, remedy for home creditors against non-resident debtors, any such unreasonable thing. In fact, to impute to the legislative arm of the government, whether by omission or design, any such act of weakness and folly would, to say the least, be highly discourteous. It is not questioned that the property, the proceeds of which is the subject of this controversy, was the property of the attachment debtor. It was part of the estate of the defendant; it was property of a tangible nature, and, as such, was liable to levy, under the provision contained in the first part of said section seven, just in the manner that an ordinary execution may be levied.

Thus far, that is as to the mere act of levying an attachment on property of the defendant in his actual or constructive possession, we may, in view of the language of the first part of said section seven, with the utmost safety reason from the analogy of levying executions. But the analogy does not hold good in other and very important respects. For instance, an attachment may be levied upon any estate of the defendant, whether the same be in the county or corporation where the suit is, or in any other county of the Commonwealth, and such levy may be made

either by the officer of the county or corporation where the suit is, or by the officer of the county or corporation where the estate is.   The officer to whom an execution is directed cannot thus act beyond his bailiwick.   There are other distinctions which will readily suggest themselves, and which should always be heeded.

But it is earnestly insisted by counsel for the plaintiffs in error that in the circumstances of this case the plaintiff in the attachment is not without remedy as to tangible property of the defendant, not in the possession of any third person, but in his own possession, and that such remedy exists alone by virtue of the eighth section, whereby the officer is authorized to take actual physical possession and control of the property when the plaintiff shall give bond as provided by said section.   For reasons which will readily suggest themselves in connection with what has been already said in reference to the seventh section, this contention is necessarily fallacious.

The eighth section in no way enlarges or changes the seventh section in respect to the property *subject* to levy, nor does it *add anything to the list of property* which is made subject to levy by the seventh section.   In fact, the eighth section in no way treats of the subject or mode of levy, nor has it any connection with the subject of *levy*, except to offer the plaintiff the option of an additional step, at the time of or after the levy, whereby his levy may be made more effectual—as, for instance, where the plaintiff may be apprehensive that the property is likely to be wasted, destroyed or eloigned.   In such case the plaintiff *may* give bond, and the bond must be in a penalty at least double the amount sworn to or sued for.   It is purely optional with the plaintiff to give the bond or not. The legislature, in framing the eighth section, had two, and only two, objects in view—1st. To advance the plaintiff's remedy at his option; 2d. To give assurance of indemnity

to the defendant in case of the wrongful or malicious suing out of the attachment. To find the truest interpreter, we need only look to the legislative scheme and policy as displayed in the attachment law, taken altogether.

It is true, the attachment proceeding is a summary and harsh remedy, and is doubtless often much abused, and while it should be strictly, it should at the same time be rationally, construed. It must be borne in mind, however, that it was the will of the legislature that made it summary and necessarily harsh, and that the rule of strict construction was designed for the protection of the debtor defendant. Here, however, the debtor is not complaining; he has abandoned the field of controversy, leaving his property confessedly subject to his debts, which he does not dispute, and the sole struggle is for preference between his creditors.

It is next to impossible to give the whole scheme of the attachment law a careful study and come to any other conclusion than that the whole subject of *levy* was disposed of in the seventh section, and that the legislature, having thus disposed of that subject, framed the eighth section with the single design of enabling the plaintiff to make his levy more effective by giving bond, and thereby making it the duty of the officer to take the property levied on in his actual physical custody. In other words, when the legislature had, by the seventh section, disposed of the whole subject of levy, it, by the eighth section, provided the additional security of seizure, upon the plaintiff giving the requisite bond. By the two sections, read together, the law in effect says to the plaintiff, "you may by a valid levy obtain a lien without disturbing the debtor's possession of the property levied on, or, at your option, you may, at the time or after the institution of your suit, go a step further and, by giving bond, compel the officer to take actual physical possession and control of

the property; but if you take this additional optional step, depriving the debtor of the possession of his property before you have established your claim, you shall first give bond, to be approved by the clerk or justice issuing the attachment, in at *least* double the amount sworn to or sued for, as a sure indemnity for any wrong done by you in suing out the attachment."

The prime object in levying the attachment is to obtain, *pendente lite*, a lien; or, in other words, to put the property in the custody of the law until by the judgment of the proper tribunal the plaintiff's claim is established, when the lien becomes effective as of the date of the levy, but must be enforced, not by virtue of the writ of attachment, but by the judgment of the court ordering a sale of the property which the attachment has simply held in waiting. Here, too, is suggested what seems to be a manifest distinction between the object and effect of levying an execution and levying an attachment. In the former there has been a final adjudication, and the writ issues to raise the money by a sale of the debtor's property; but in the latter the object is simply to acquire a lien, or to hold the property in *custodia legis*, until the adjudication of the claim; and if the plaintiff fails to establish his claim the lien vanishes, and the property is discharged from legal custody. In either case, if there is a valid levy, the officer has, by virtue of his levy, the constructive possession, at least, of the property levied on, though he may never have had the actual physical control thereof, he being liable for any loss resulting from his negligence or from the eloignment of the property. But, from the manifest distinction above adverted to, it may well be doubted whether the officer should be held to the same strict accountability in the case of an attachment where no bond is given as in the case of an execution, because in the case of an execution the object is to sell and raise the money, whereby it

would seem that *a levy*, in a higher degree, imports actual seizure; whereas, in the case of an attachment, where no bond is given, the policy of the law clearly is not to require actual seizure; and it being optional with the plaintiff to give or not to give the bond, if he declines to give it, it would seem that he thereby elects to take the benefit of his levy without disturbing the debtor's possession. But as to this we decide nothing, it being unnecessary for the proper disposition of this case.

The remedy by attachment is necessarily a harsh one; but it could never have been the legislative intention to push it beyond harshness into what would be akin to wanton cruelty, by requiring actual seizure in every case; yet such would be the effect of upholding the contention for the plaintiffs in error. If it be true that in a case like this the plaintiff must give bond, as provided by the eighth section, in order to have actual seizure, and in order to make a valid levy, then gross injustice would result, (1) to the poor man who may not be able to give the bond, and yet be entitled to this remedy, and (2) to many large industries conducted in this State by non-residents, who, when set upon, though never so unworthily, would be compelled to turn their business and effects over to the levying officer. That the legislature could have intended anything of the kind is repugnant to reason, and therefore inconceivable.

It only remains to respond very briefly to the second question,—"If such a levy can be accomplished, was it effected by the defendants in error in this case?"

That such a levy is authorized by the first clause of said section 7, which provides that the attachment may be levied on *any estate* of the defendant, and that the acts essential to the valid levy of an attachment are the same as those necessary to constitute a valid common law levy of an execution, has been shown in considering the first

proposition.  The first part of said section 7 provides, as has been shown, for a levy upon the effects of the defendant, not in the hands of any third person, but in his own possession, actual or constructive.  Having, in a general way, thus provided, the legislature, after a full stop, proceeded, by the second clause, to the main object in view, which was to remedy existing evils with respect to property of the debtor in the hands of third persons, debts due the debtor by third persons, and real estate of the debtor; and a levy as to these was provided for in this language : "It shall be sufficiently levied in every case, by a service of a copy of such attachment on such persons as may be designated by the plaintiff in writing, or be known to the officer to be in possession of effects of, or to be indebted to, the defendant; and as to real estate, by such estate being mentioned and described by endorsement on such attachment."

Thus were provided two modes of levy; first the common law mode, as in the case of an execution, and second, by service of a copy in the cases enumerated in the second part of said section 7.  It is obvious from the context that the language in the second part of section 7, "it shall be sufficiently levied in every case," &c., refers to the enumeration immediately following, and not to cases where the debtor's property is in his own possession.  And the plain meaning is, that in every case in which certain persons are designated by the plaintiff in writing, or are known to the officer to be in possession of effects of, or to be indebted to, the defendant, &c., the levy may be made by the service of a copy of the attachment as aforesaid.  It is equally clear that in this case the property was either actually or constructively in the possession of the attachment debtor, and was levied on in the common law mode as authorized by the first part of said section 7.  Was that a valid levy? That actual physical seizure is not, in this State, necessary

to constitute a valid levy, is a proposition too well settled to need the citation of authorities. In 2 Tucker's Com., at p. 367, it is said : " To constitute an effectual levy it is not essential that the officer should make an actual seizure; if he have the goods in his power and view, this may suffice; as where certain slaves were in the *presence* of the officer, on which he declared that he levied the execution, and thereupon took a list of them, but did not touch them, and went away without removing them from the debtor's custody on his engaging to produce them on the day of sale; this was, nevertheless, deemed a good levy,"—citing *Bullitt's Ex'ors* v. *Winstons*, 1 Munf. 270, where it was so ruled, and in the case of an execution on a forfeited forthcoming bond where the statute forbade the taking of security of any kind.

In this case the officer went near enough to the property he undertook to levy on to be in full view of it and to bring it in his power. He was, it is true, distant from the property some three hundred yards, but it was in full view; was not in the possession of any third person; no one was at or near it, nor anyone asserting an adverse claim thereto, and the officer had nothing to do but to walk across an open bridge and through an open space for a short distance and take actual possession; which, however, he did not do because no bond had been given authorizing him to make actual seizure. Under such circumstances—especially in consideration of the bulk and character of the property— it became as effectually in the power and subject to the control of the officer as if he had gone to and laid his hand on it. In fact, the only plausible objection urged is the distance of the officer from the property when the levy was made. For reasons already stated, it is obvious that this objection cannot prevail. We do not pretend to say that, under all circumstances, and with respect to all kinds of property, whatever its character and however situated, a

valid levy could be made at such a distance from the property. On the contrary, in numerous instance that have occurred, and are likely to occur in the future, such a levy would be wholly invalid. But under the circumstances of this case, the levy of the attachment of the defendants in error, F. M. Masters and others, was a valid levy, and being, in point of time, the first attachment levied, is entitled to the preference accorded to it by the judgment complained of. For these reasons, we are of opinion there is no error in the judgment of the court below, and the same must be affirmed.

HINTON, J., DISSENTED.

JUDGMENT AFFIRMED.