# Richmond

## THE FIRST NATIONAL BANK OF WAYNESBORO v. R. H. JOHNSON, ET ALS.

October 9, 1944.

Record No. 2844.

Present, All the Justices.

The opinion states the case.

*G. H. Branaman*, for the appellant.

*Thomas B. Gay* and *J. M. Perry*, for Standard Oil Company of N. J., appellee.

HUDGINS, J., delivered the opinion of the court.

Under the provisions of Michie's 1942 Code, sec. 6383a (Acts of 1932, p. 460), the First National Bank of Waynes-

boro filed its bill in equity alleging that R. H. Johnson and Mary C. Johnson, his wife, were indebted to it in the sum of $704.16, less a credit of $22.95, evidenced by a note which became due on July 5, 1941; and that R. H. Johnson had recently been engaged in operating a gasoline filling and service station in Waynesboro, Virginia, but that he had removed, or was about to remove, himself and his effects from the State so that a sufficient amount of his assets to satisfy the claim would not be forthcoming if only the ordinary process of law were used to obtain a judgment. The bill further alleged that R. H. Johnson was the owner of personal property, both tangible and intangible, in the possession of the Standard Oil Company of New Jersey, A. R. Harding. F. W. and B. F. McClung, trading in business as McClung Brothers, Simmons Parts Company, Mary C. Johnson and others. Attachments were issued, duly levied and served upon the parties named as defendants.

The Standard Oil Company of New Jersey answered the bill, alleging that it had sold Johnson certain merchandise for which he was indebted to it in the sum of $1,106.85; that, prior to the service of the attachment, it had seized and sold the merchandise it had formerly sold to Johnson to one A. R. Harding for the sum of $1,206.14; and that it was entitled to set off the amount of its debt—$1,106.85—against the amount received from the wrongful sale of the merchandise. If offered to pay the difference—$99.29—into court.

On the issues thus raised, the cause was referred to Commissioner J. H. May, now judge of the Corporation Court of the city of Staunton, who reported that the Standard Oil Company of New Jersey was not entitled to the set-off claimed by it and that it was liable to attaching creditors for the value of the merchandise owned by Johnson that the Standard Oil Company had converted to its own use. From a decree sustaining the Standard Oil Company's exceptions to the report and holding that the Standard Oil Company was entitled to the set-off claimed, the First National Bank of Waynesboro obtained this appeal.

R. H. Johnson leased from the Standard Oil Company of New Jersey, for a period of one year from May 1, 1941, a lot, with improvements and enumerated articles of personal property thereon, located at the corner of Jefferson highway and Commerce avenue in Waynesboro, Virginia, for the purpose of operating a service station and selling automobile supplies and other merchandise. The annual rental was $1,680, payable in advance in equal monthly installments at $140 on the first day of each month. The lease further stipulated that, in the event default should be made in the payment of rent, the lessor should have the right to re-enter the premises.

The monthly rentals for May and June were paid. On July 7, 1941, W. J. Hewlett and R. W. Hawkins, district sales manager and general salesman, respectively, of the Standard Oil Company, were informed that R. H. Johnson had left Waynesboro for parts unknown. About eight-thirty that night they called by the service station and found it in charge of and being operated by Merlin Johnson, a brother and employee of R. H. Johnson. On inquiry Merlin Johnson informed them that R. H. Johnson had "told him goodbye," and said he was leaving. The two agents of the Standard Oil Company called on Mrs. R. H. Johnson and were informed that she did not know where her husband was and understood that he had left for parts unknown. Merlin Johnson was told to conduct the business as usual, which he did until noon, July 9, when the station was closed by order of the Standard Oil Company. A separate itemized account of sales was kept during this interval. The cash and due bills received were delivered to the agents of the Standard Oil Company with the exception of $22.95, which was applied by Mrs. Johnson on the payment of another debt.

On orders given by Hewlett, all the merchandise and personal property, except that bought from the Standard Oil Company, were removed from the premises either by Mrs. R. H. Johnson or parties from whom the merchandise and other property had been purchased. With the assistance

of Mrs. R. H. Johnson and Merlin Johnson, the agents of the Standard Oil Company, on July 11, completed an inventory of the merchandise, including gas and oil, on the premises.

In the meantime, Hewlett had been negotiating with A. R. Harding for the lease of the premises and the sale of the merchandise. After Harding had agreed to lease the premises and purchase the merchandise, but before the contract of lease and sale had been approved by the Richmond office of the Standard Oil Company, and while the parties were still on the premises, a deputy sheriff of Augusta County appeared with process and writs of attachment issued in this cause. Copies were served upon "Mr. Hewlett and Mrs. Johnson, Mr. Simmons and Mr. Harding all at the station."

All the parties understood that the sheriff levied the attachment on all the tangible personal property then in his view. The officer asked the agent of the Standard Oil Company whether it was necessary for him to stay there and make a complete inventory, to which Mr. Hawkins replied that he was making a full inventory of the merchandise and would give him a copy of the completed inventory that night or the next day. The officer made the following return on the attachment: "* * * also by attaching and levying upon the filling station fixtures, equipment and supplies in the possession of the Standard Oil Company of New Jersey and A. R. Harding, found at the filling station at the intersection of Commerce Ave., and East Main St., in the Basic Section of Waynesboro, Va., itemized statements whereof are hereto attached as a part of this return."

On July 12, Hawkins, on the advice of counsel, refused to give the officer a copy of the inventory but said that he would present a copy to the court at the hearing. Copies of this inventory were filed with the commissioner and made a part of the record. The identity of the personal property of R. H. Johnson, on which the officer made the levy, is not questioned.

The substance of Standard Oil Company's defense is that it had possession of tangible personal property owned by

Johnson and. had wrongfully transferred this possession to A. R. Harding prior to the levy, and that the only claim Johnson had against it was a right of action for conversion or an action of *assumpsit* for the value of the goods.

The writ of attachment, like an execution, affects tangible personal property and *choses* in action. In order for the writ to become a lien on tangible personal property, a proper levy must be made. This is done in one of two ways—the officer may seize the property when it is in possession of the principal defendant, or even when it is in possession of a third party if in so doing he does not commit a trespass; or he may serve the writ of attachment on a party in possession named as co-defendant. In either event, the lien of attachment begins from the time of the levy or the service.

When it is sought to subject a *chose* in action to the lien of an attachment, service is made upon the principal defendant's debtor, who must disclose to the court the status of his indebtedness. After the service of the attachment, the co-defendant cannot convert tangible property, in which he has no interest, or lien upon, to a *chose* in action and claim set-off against the attaching creditor.

The 1932 amendment to the attachment statutes (Michie's 1942 Code, sec. 6383a) permits an attachment to be issued on a bill in equity, as was done in this case. This statute provides that, in the event the affidavit on which the attachment is authorized to be issued does not describe any specific personal property, the sheriff is authorized to attach any estate of the principal defendant, whether found "in his own hands or in the hands of other defendants." While appellant did not describe any specific property of R. H. Johnson in its affidavit, it did not rely solely on the service of the attachment upon the Standard Oil Company. The appellant made both the Standard Oil Company and A. R. Harding parties defendant to the bill. In addition, it directed and required the sheriff to levy his attachment upon all the property of Johnson on the leased premises. This the sheriff did, and it so appears, not only from his return

but from his testimony. He testified that he "made a levy on everything in the station."

Even if it be conceded that the verbal lease of the premises and sale of the merchandise had been concluded before the sheriff arrived, the property attached was on the premises in plain view, and was therefore under the control and dominion of the sheriff, who informed both representatives of the Standard Oil Company and A. R. Harding that he was making the levy on the property as the property of R. H. Johnson. The authority of the sheriff to make the levy was not questioned. Both the Standard Oil Company and A. R. Harding submitted to the levy and knew for what purpose the sheriff made it. Neither claimed any lien on, or interest in, the property. There had been no commingling of the property of Johnson with that of the Standard Oil Company or A. R. Harding.

▆▆ If an officer, without committing a trespass, enters the premises and announces his levy by acts and words, the goods are then in his control, even though an inventory is not made at the time. *Grove* v. *Harris*, 35 Tex. 320-322; *Caldwell* v. *Fifield*, 24 N. J. L. 150; *Hill* v. *Harris*, 10 B. Mon. (Ky.) 120, 50 Am. Dec. 542. An officer has a right to levy upon tangible personal property even though the possession of such property is in the hands of a third person not a party to the suit. 7 C. J. S. 392.

▆▆ Under the attachment statutes, the officer is not required to take possession of the property unless the plaintiff in the attachment suit gives bond as required by section 6384 of the Code of 1919. A party in possession, with knowledge of the levy, transfers the property at his peril. A. R. Harding, who acquired no title by his purchase from the Standard Oil Company, had no right to convert the tangible personal property upon which the levy had been made into a *chose* in action and plead set-off against Johnson or attaching creditors.

In *Dorrier* v. *Masters*, 83 Va. 459, 2 S. E. 927, the officer made the following return upon an attachment: "I also levied this attachment, between 11 and 12 o'clock A. M.

the same day, on a large lot of hoop-poles found on a slip of land between the dock and the river, near the ship locks. I did not take the property in possession, as no bond was given for that purpose." Some of the piles of hoop-poles belonged to a third party who afterwards claimed his part of them. With the consent of the parties, the hoop-poles belonging to the debtor were sold for $2,460.67. However, the piles of hoop-poles were not otherwise identified or otherwise described. This court held the levy valid. Many of the points decided in that case are now included in section 6390 of the Code of 1919.

It is quite true that in the *Dorrier Case* no one claimed to be in possession of the hoop-poles. Section 6390 simply provides that an attachment "may be" levied as therein set forth. It does not exclude the right of the attaching officer to levy upon the property of the defendant in the hands of a third party.

One who has no title to personal property can transfer none. A buyer from such a seller, even though he pays value in good faith without notice, does not acquire title against a rightful legal claimant. Williston on Sales, 2d ed., vol. 1, sec. 311. A. R. Harding filed no answer, nor did he testify in the case. From this silence and from the circumstances under which the purported sale was made, the conclusive inference is that Harding knew the Standard Oil Company had no authority to give him title to the merchandise on the leased premises. After the service of the attachment Harding dealt with the property attached at his peril.

Code of 1919, sec. 6399, provides that if the attachment be served on a co-defendant, as was done upon A. R. Harding in this case, and such defendant fails to appear, the court may either compel him to appear "or hear proof of any debt owing by him, or of effects in his hands belonging to said defendant in such attachment, and make such orders in relation thereto as if what is so proved had appeared on his examination."

The Standard Oil Company was the landlord of a merchant who absconded leaving his merchandise on the leased premises. It had a right under its lease to re-enter the premises. This it did. But it did more. It first continued to conduct the business of the absconding debtor. It then took full possession of all the merchandise and property of the lessee on the leased premises. It ordered certain creditors and the wife of the lessee to remove from the leased premises all the merchandise and property which the Standard Oil Company had not sold to the lessee. It sold the remaining merchandise to A. R. Harding. As a result of these unlawful acts, a few local creditors of Johnson received what was tantamount to payment in full of the debts Johnson owed them, while other creditors received no payment at all on the debts due them by Johnson.

It is stated in the Standard Oil Company's brief that "The taking was admittedly a conversion and was found so to be by the Commissioner and the Chancellor. That fact in no way militates against Standard's right of set-off against the plaintiff whose right can in no way be greater than Johnson's."

This is a confession that the benefit claimed is based upon the Standard Oil Company's own wrongful acts. These acts constituted more than a simple conversion. The Standard Oil Company unlawfully assumed the management of Johnson's property. It dissipated all of Johnson's assets. It received value for part of these assets. It ordered other assets to be removed from the premises and made no attempt to ascertain and secure the value thereof. It thus became a trustee *de son tort* and is liable as such.

A trustee cannot set off against the trust fund held by him his individual demand against the creator of the trust. "In this connection, equity treats the fiduciary as holding the *res* in a separate capacity." 47 Am. Jur. 748. One of the elementary principles of set-off is that "The demands must be due between the same parties, and in the same right. A debt due from a partner cannot be set up against a partnership demand, nor *vice versa*, nor can a debt

due to one as executor, administrator, or trustee, be set up against one in his own right, nor *vice versa*." Burks' Pl. & Pr. (3d ed.), p. 398. See *Dakin* v. *Bayly*, 290 U. S. 143, 54 S. Ct. 113, 78 L. Ed. 229, 90 A. L. R. 999.

Johnson was a merchant and owed many creditors. Any sale or transfer by him of the stock of merchandise and fixtures, otherwise than in the ordinary course of business, would have been void as to his creditors. Code of 1919, sec. 5187. No other party, by an illegal seizure and sale, could transfer to another any higher or greater right in the property than could Johnson himself.

The First National Bank of Waynesboro is the only creditor of R. H. Johnson who perfected an appeal. Inasmuch as the amount of its claim is less than the value of the stock of merchandise upon which the levy was made, a final decree for the full amount of this claim will be entered against the Standard Oil Company of New Jersey and A. R. Harding.

*Reversed and final decree.*