**In re Donald Nelson LAMM and Patricia Crockett Lamm.**

**Civ. A. No. 83–205–NN.**

United States District Court,
E.D. Virginia,
Newport News Division.

Jan. 17, 1984.

R.L. Shrecengost, Newport News, Va., for appellees.

## OPINION AND ORDER

KELLAM, District Judge.

This appeal from the Bankruptcy Court brings on for consideration the question of when does a transfer of funds withheld by a fieri facias, a garnishment summons, become effective as it relates to 11 U.S.C. § 547(b)(4)(A).

### I.

The facts are not in dispute. Natpac Foods, Inc. (Natpac) recovered a judgment against Donald Nelson Lamm (Donald) on August 16, 1982, in the state courts of Virginia. It sued out a writ of fieri facias (§ 8.01–466 Code of Virginia) on the judgment and a garnishment summons (§ 8.01–511 Code of Virginia) on September 24, 1982. The garnishment was served on Donald and Anheuser Busch, Inc., the employer of Donald, and returnable to December 23, 1982. The garnishment directed the employer to withhold from the wages of Donald a sufficient sum to cover the principal, interest, costs, etc. of the judgment, for a total of $988.82. After paying to the wage earner the sums exempt from garnishment, as provided by statute, the garnishee withheld the excess each week until the garnishee had in hand the total sum needed to discharge the lien and judgment. The first withholding was on September 26, 1982, and the final one on November 14, 1982. On November 19, 1982, Anheuser Busch, Inc. swore to the accuracy of its answer, showing the full sum of $988.82 had been withheld. That answer was filed with the Court—the exact date of the Court's stamp is blurred, but appears to be November 1982. On December 23, 1982, the return day of the garnishment,

judgment was entered against the garnishee for $988.82. The record does not disclose whether Anheuser Busch paid the funds to the Court with its answer, or when the funds were actually surrendered by it or when Natpac actually received the funds.

On March 11, 1983, Donald and his wife filed a joint petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Act. In the schedule filed with the petition, Donald and his wife sought to claim an exemption of $247.21, pursuant to Section 34–29 of the Code of Virginia, consisting of a part of the garnished wages, and the balance under Section 34–4 as a homestead exemption.[1]

## II.

The order of the Bankruptcy Court of September 30, 1983, from which this appeal is taken, provided:

1. That Natpac is in possession of $988.82 paid pursuant to a garnishment summons ... returnable on December 23, 1982, said return being within ninety days of the filing of a voluntary petition herein;

2. Although the employer deducted ... wages of Debtor, Donald Nelson Lamm, more than ninety days prior to filing of his petition ... such transfer is a preference and voidable under § 547 ... because the return date of the garnishment summons and not the actual date the funds were deducted from Debtor's wages is the date of transfer.

3. The Debtors are entitled to claim an exemption of $247.20 in the garnishment wages held by Natpac.

4. Trustee shall recover of Natpac ... $988.82.

The total file from the Bankruptcy Court has not been made a part of the record and is not before this Court. Debtor's Schedule B–4 (2 pages), objections to Debtor's claimed exemptions, answer to the garnishment, the garnishment summons; and a few other papers are part of the record on appeal. In Schedule B–4, property claimed

---

1. Section 34–29 of the Code of Virginia exempts certain portions of a wage earner's wages from garnishment. The wage earner may also claim wages under the homestead exemption as provided by statute, if he has not waived it. Section 34–22 Code of Virginia provides one of the means by which the homestead may be waived. A bankrupt may claim as exempt any property that is exempt by state law. But "for the property to be exempt under state law, it must be claimed as exempt, in the manner prescribed by those laws ... (and) the exemption ... presupposes compliance with the pertinent state and local laws." *Zimmerman Trustee v. Morgan,* 689 F.2d 471, 472 (4th Cir.1982). Sections 34–6 and 34–13 of the Code of Virginia sets forth how the homestead may be claimed in a real and personal property. A deed or inventory under oath is for the purpose of setting aside the property claimed and to give notice of it to the world. *White v. Owen,* 71 Va. [30 Gratt] 43; *Linkenhoker v. Detrick,* 81 Va. 44. The homestead exemption is not absolute under Virginia statute. "It exists only when and after the debtor has claimed it and perfected it" in the manner required by statute. *In re Robinette,* 34 F.Supp. 518, 521 (D.C.Va.1932); *In re Swift,* 96 F.Supp. 44, 46 (D.C.Va.1950). "The exemption arises when the declaration is filed and not before," for "[u]p to that time the [land] property is subject to execution and attachment like other land; and where a levy is affected while the property [land] is in that condition, the subsequent making and filing of a declaration neither avoids the levy nor prevents a sale under it." *White v. Stump,* 266 U.S. 310, 311, 45 S.Ct. 103, 69 L.Ed. 301 (1924). The "state laws existing when the petition is filed (is) the measure of the right to exemptions." *Id.* The exemption is not of property which would or might be exempt if some condition not performed were performed, but to property to which there is under the state law a present right of exemption. Assuming the judgment entered against Donald was not pursuant to a homestead waiving instrument, he could have up to the time of entry of the judgment on the garnishment filed a homestead claiming said funds. He did not so do, and thereby waived the right to do so. When bankrupt failed to claim the benefit of the homestead, he lost it. Property to which Donald was entitled as an exemption "may be set apart at any time before it is subjected by sale, or otherwise under judgment, decree, order, execution or other legal process," provided that where a person has not waived or foregone his right to act, if he files a voluntary petition in bankruptcy, may set it apart before or on the same day that he filed his petition. *See Wilson v. Virginia National Bank,* 214 Va. 14, 196 S.E.2d 920, 921 (1973); *Smith v. Holland,* 124 Va. 663, 98 S.E. 676 (1919); Va. Code §§ 34–14 and 34–17.

to be exempted pursuant to Section 34–4 of the Code of Virginia, consists of approximately $5,000.00, under 34–26 of the Code of Virginia some $3,000.00, and under 34–29 of the Code of Virginia, some $8,700.00, including $741.61 wages garnished by Natpac, plus wages due of $399.00, plus other sums claimed for a total exemption of $17,330.07. Objection to to the claimed exemptions were filed by Natpac, particularly the sums paid in the garnishment proceedings of $988.82. The objection sets forth that the said sum received "represented the non-exempt portion of wages payable by said employer to Debtor on dates more than 90 days prior to March 11, 1983, the date of the filing of the bankruptcy petition; and that debtors had no interest in the said monies on the date the petition was filed or 90 days previous thereto."

For simplification of the issue, judgment was obtained by Natpac against Donald on August 16, 1982; execution was issued on the judgment September 24, 1982, as well as a garnishment summons directed to Donald and Anheuser Busch, suggesting that by reasons of the lien of the fieri facias (execution) there was liability upon the garnishees, and directed Anheuser Busch to withhold funds from any sum due or to become due to Donald after date of service of the summons to cover the lien of $988.82, except such sums as were exempt pursuant to Section 34–29 of the Code of Virginia. The voluntary petition in bankruptcy was filed March 11, 1983.

### III.

■ Virginia Code 8.01–478 provides that except for exemptions provided for in Title 34, a writ of fieri facias may be levied on goods and chattels and money and banknotes of a judgment debtor and "shall bind what is capable of being levied on only from the time it is actually levied by the officer to whom it has been delivered to be executed." [2] Under the Virginia law, the officer is not required to seize the property

levied on, only that he have them in his power and note it on the execution. *Palais v. DeJarnette*, 145 F.2d 953 (4th Cir.1944); *Dorrier v. Masters*, 83 Va. 459, 2 S.E. 927. The lien acquired by the levy of the execution is both substantial and enduring, as much so as a mortgage or a pledge. *Humphrey v. Hitt*, 47 Va. (6 Gratt) 509. Virginia Code Section 8.01–501 provides:

> Every writ of fieri facias shall, in addition to the lien it has under §§ 8.01–478 and 8.01–479 on what is capable of being levied on under those actions, be a lien from the time it is delivered to a ... officer to be executed, on all personal estate of or which the judgment debtor is or may afterwards and on or before the return day of such writ became possessed or entitled, which, from its nature is not capable of being levied on under such sections, except such as is exempt under the provisions of Title 34, and except as against an assignee of any such estate for valuable consideration, the lien by virtue of this section shall not affect him unless he had notice thereof at the time of the assignment.

The lien of fieri facias extends to all the personal estate of the judgment debtor which is not capable of being levied on, which includes bonds, notes, stocks, debts of all kind, including a debt payable in the future and includes all choses in action to which a debtor may be entitled. *Boisseau v. Bass*, 100 Va. 207, 209, 40 S.E. 647; *Evans v. Greenhow*, 56 Va. (15 Gratt) 153; *In re Acorn Electric Supply, Inc.*, 348 F.Supp. 277, 280 (D.C.Va.1972).

■ The execution of a writ of fieri facias establishes a lien on intangibles from the time it is delivered to the officer. Virginia Code 8.01–501; *Pischke v. Murray*, 11 B.R. 913, 916 (Bkrtcy.E.D.Va.1981). The lien, once established, only ceases when the right of the judgment creditor to enforce the judgment by execution or by action, or to extend the right by motion, ceases. Further, as to intangibles, the lien

---

**2.** The prior statute made the execution a lien from the date it was delivered into the hands of the officer. The amendment now makes it a lien from the time of levy or serving of the garnishment summons.

shall cease one year from the return date of the execution pursuant to which the lien arose, or where the intangible is a debt due from or a claim upon, a third person in favor of the judgment debtor or the estate of such person, one year from the final determination of the amount owed to the judgment debtor. Virginia Code § 8.01–505.

Pursuant to Virginia Code Section 8.01–511, on a suggestion by the judgment creditor "that by reason of the lien of his writ of fieri facias, that there is a liability on any person other than the judgment debtor, upon which sum, when determined such writ of fieri facias is a lien, a summons of garnishment may be sued out and served on the garnishee and the judgment debtor." The fieri facias issued on the judgment became a lien when the garnishment summons was issued and served. *First National Bank of Norfolk v. Norfolk & Western Railway Co.,* 327 F.Supp. 196, 197 (D.C.Va.1971). Garnishment "is the process by which a judgment creditor enforces the lien of his execution against a debt or property due his judgment debtor in the hands of a third person, garnishee." *Lynch v. Johnson,* 196 Va. 516, 84 S.E.2d 419, 421 (1954). A summons in garnishment under the Virginia statute is a warning to the garnishee not to pay the money or deliver the property of the judgment debtor in his hands, upon penalty that if he does, he may subject himself to personal judgment. *Lynch v. Johnson, supra.* There being a lien against the funds in the hands of the garnishee, he is merely a stakeholder, and may escape all liability by surrendering the funds to the Court for its proper disposition. The garnishment summons itself does not create a lien, but the lien is created by the fieri facias, and dates from the date of the delivery of the fieri facias to the officer. The garnishment is the notice of the lien. For "the purposes of bankruptcy, the judgment lien need not be absolute, unequivocal or irrevocable," but "need only be superior to the rights of a subsequent judgment lien creditor, and in Virginia, the lien by writ of fieri facias is such a lien." In re *Acorn Electric Supply,*

*Inc., supra,* 348 F.Supp. at 281. See also *Metcalf Brothers & Co. v. Barker,* 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902); *Charron & Co. v. Boswell,* 59 Va. (18 Gratt) 216; *Jackson v. Valley Tie & Lumber Co.* 108 Va. 714, 62 S.E. 964 (1908). Under the Virginia Code 8.01–501, "the only person who can defeat the fieri facias lien is a bona fide purchaser or assignee for value without notice," and "the satisfaction of . . . [the] preexisting execution lien, during the four-months period preceding the filing of the bankruptcy petition, was not a preference." *In re Acorn Electric Supply Inc., supra,* 348 F.Supp. at page 282. This "means that the Virginia execution lien on intangibles is perfected for bankruptcy when the writ of fieri facias is delivered to the officer to be executed." *Id.* Here, as in *Acorn Electric, supra,* the execution and garnishment were delivered to the officer on the same day, and promptly served.

Hence, the lien is created when execution is delivered to the officer. The lien exists from that date. The issuance and service of the garnishment is the means of enforcing the lien. The lien was created on September 24, 1982, when the fieri facias was delivered to the officer. The fact the funds were not actually paid over by the Court until December 23rd, 1982, did not affect the lien. All funds had been earned by Donald, were due to him and would have been paid to him had the garnishee summons not directed funds be deducted from his wages. All sums had been deducted and were in the hands of Anheuser Busch, ready to be paid to the Court more than 90 days prior to the filing of the petition in bankruptcy on March 11, 1983. A sum sufficient to pay the judgment and garnishment in full was in the hands of the garnishee on November 14, 1982, much more than 90 days before the filing of the bankruptcy petition, all of which is shown by the answer of the garnishee and made a part of the record on appeal. Under the provisions of Virginia Code § 8.01–520, the garnishee could have on November 14, 1982, paid the funds to the Clerk of the General District Court and

been discharged. Actually, since it is clear the garnishee deducted the funds and had them in hand, the judgment entered on the garnishment should have been and in fact was entered against the garnishee and not Donald. See Virginia Code § 8.01–516, and copy of garnishment summons filed.

The issue of whether the limitation period of 90 days provided by 11 U.S.C. § 547(b)(4)(A) began at the time the Court entered judgment against the garnishee, which in effect, ordered the funds paid to Natpac on December 23, 1982, or whether the 90 days began from the date of the lien of the fieri facias—September 24, 1982— has been, it seems to me, put to rest by the decision of the Supreme Court in *Metcalf Brothers & Co. v. Barker*, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). There, dealing with the forerunner statute of § 547, the Court said:

> In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. If this were not so the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial.

The above language was quoted with approval in *Straton v. New*, 283 U.S. 318, 325, 51 S.Ct. 465, 468, 75 L.Ed. 1060 (1931). In that case, though dealing with real estate, the Court said that "the federal courts have with practical unanimity held that

where a judgment which constitutes a lien ... is received more than four months prior to filing of the [bankruptcy] petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of the petition in bankruptcy to bring about a judicial sale of the real estate." (citations omitted). The issuance of a garnishment is "merely in the nature of [a] proceeding to obtain the avails of the judgment lien." 283 U.S. at 327, 51 S.Ct. at 469. That is, there is a substantial difference "between the beginning of a proceeding to assert liens that existed more than four months before the filing of the petition in bankruptcy, and the attempt to create them by attachment and other proceedings within four months." *Globe Bank & Trust Co. v. Martin*, 236 U.S. 288, 299, 35 S.Ct. 377, 381, 59 L.Ed. 583 (1914).

In *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350, 352 (4th Cir.1968), the issue was whether the service of a writ of attachment by way of garnishment more than four months before filing of a petition in bankruptcy upon which judgment had not been rendered within the four month period, was a lien created more than four months before filing of bankruptcy.[3] The Court held the lien was created by the garnishment,[4] saying:

> Service of the writ of attachment by way of garnishment on Frederick created in Baltimore Rigging an inchoate lien on Bankrupt's property, credit or funds in the hands of Frederick at the time of service, which, in this case was May 31, 1963, and judgment may be rendered thereon even after filing of bankruptcy. (citations omitted).

■ A lien established more than four months (in this case 90 days) prior to the filing of bankruptcy, is a lien not subject to avoidance by bankruptcy even though the enforcement, or payment or transfer of the

---

**3.** In *Walutes,* after service of the garnishment, the parties reached agreement and the agreed sum was paid. No judgment was entered and the suit was dismissed. The lien was held good against bankruptcy.

**4.** This was pursuant to Maryland law.

monies occurs within four months (here 90 days) of the filing of the bankruptcy petition. Such a lien is not affected by the fact the judgment lien is not absolute, unequivocal, or irrevocable, or by reason of the fact the proceedings for enforcement are contingent upon the recovery of a valid judgment, or the fact the lien is contingent and enchoate and might be defeated by subsequent events. This holding is made plain by *Metcalf Brothers & Co. v. Barker, supra; Walutes v. Baltimore Rigging Co., supra,* and *In re Acorn Electric, supra.* The following cases also support that principle: *Black v. Strand,* 362 F.2d 8, 13–14 (8th Cir.1966), (motion to amend and rehearing denied); *Bass v. Stodd,* 357 F.2d 458, 464–465 (9th Cir.1966); *United States Rubber Company v. Poage,* 297 F.2d 670, 674 (5th Cir.1962); *Muffler v. Petticrew Real Estate Co.,* 132 F.2d 479, 482 (6th Cir.1942); *Mulhern v. Albin,* 163 F.2d 41, 43 (8th Cir.1947); *Kaufman v. Eastern Baking Co.,* 146 F.2d 826, 828 (1st Cir. 1945); *Von Segerlund v. Dysart,* 137 F.2d 755, 759 (9th Cir.1943); *Brown v. Tru-Lite Co.,* 398 F.Supp. 800, 804 (D.C.La.1975); *Butz v. Bancohio National Bank,* 13 B.R. 425 (B.C.Ohio 1981); *Re Brinker,* 12 B.R. 936 (1981 B.C.D.C.Minn.)

### IV.

The filing of the petition in bankruptcy did not affect the lien of the execution and garnishment summons issued on September 24, 1982, which was more than 90 days before the filing of the petition in bankruptcy. Added to this is the fact that all sums were removed from the possession and control or right of possession and control of Donald more than 90 days before the Bankruptcy petition was filed. The sum of $988.82 was therefore not subject to the provision of 11 U.S.C. § 547. It follows that under the facts of this case, the right to claim any part of said funds

under the homestead or any other exemption falls.[5] Here, the time to have claimed exemptions as to any part of said $988.82 was in the garnishment proceedings. That judgment is now final.

The lien of the execution and garnishment having been created more than 90 days before the filing of the petition in bankruptcy and the funds ordered and paid to Natpac by the General District Court of Virginia on December 23, 1982, did not constitute a preference and was therefore not voidable under 11 U.S.C. § 547. The Trustee is not entitled to recover the sum of $988.82 or any part thereof from Natpac. The judgment of the Bankruptcy Court finding that the Trustee may recover the said $988.82 and that bankrupt may claim $247.21 of the said $988.82 as exempt, is REVERSED and judgment should be entered for Natpac.

---

**5.** The judgment of the General District Court, being final, is res judicata of any right of Donald to claim any of said sum under any type of exemption. Any exemption to which he was entitled should have been claimed there. *Metcalf Brothers & Co. v. Barker,* 187 U.S. 165, 175,

23 S.Ct. 67, 71, 47 L.Ed. 122, *see also Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *Smith v. Holland,* 124 Va. 663, 98 S.E. 676 (1919); Va.Code §§ 34–14, 34–17.