**In re James Ronald HUGHSON, Debtor.**

**James Ronald HUGHSON, Movant,**

v.

**DRESSLER MOTORS, INC., Respondent.**

**Bankruptcy No. 5–87–00122.**

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

June 2, 1987.

Jeffrey A. Crackel, Clifton Forge, Va., for debtor.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

Debtor filed a Motion to Avoid Transfer Pursuant to 11 U.S.C. § 522(h). The issue before this Court is what is the effective date of the transfer of wages of the Debtor which were garnished by the creditor, Dressler Motors, Inc., whether the transfer would be avoidable by the Trustee under 11 U.S.C. § 547(b) of the Bankruptcy Code, and whether it is therefore avoidable by the Debtor under 11 U.S.C. § 522(h) since the Trustee elected not to pursue the recovery of the garnished wages.

### Facts

The facts show that Dressler Motors, Inc. obtained a judgment against the Debtor, James Ronald Hughson, on May 14,

1984. Thereafter, on October 13, 1986, Dressler caused a summons in garnishment to be issued by the Circuit Court of Alleghany County and, as reflected by Debtor's Exhibit No. 1, the execution on Dressler's judgment was issued and delivered to the Sheriff of Clifton Forge on October 13, 1986. The garnishee in this case is the Commonwealth of Virginia-Department of Highways, Triangle Division, Clifton Forge, Virginia. Upon its receipt of the garnishment summons, the garnishee commenced to withhold the required funds from each of the Debtor's subsequent paychecks. The return day for the garnishment summons was January 12, 1987. It appears from Debtor's Exhibit No. 2 that by December 29, 1986, the garnishee had paid over to Alleghany County Circuit Court all of the funds which it was required to withhold and on December 29, 1987, the Alleghany County Circuit Court forwarded the funds to Dressler Motors Inc. The sum involved was $505.55. At no time during the garnishment proceedings did the Debtor homestead any garnished wages. However, on his bankruptcy schedules and with his bankruptcy petition, the Debtor did claim a homestead exemption for the garnished wages. The date of the filing of the Debtor's petition for relief was March 12, 1987.

### Law

The Debtor asserts that the effective date of the transfer which could have been avoided by the Trustee under 11 U.S.C. § 547(b) was January 12, 1987, the date on which the garnishment summons was returnable to the Alleghany County Circuit Court. If the return date for the garnishment summons is the effective date of the transfer, then the transfer occurred within the ninety (90) days prior to the March 12, 1987, filing date of the Debtor's petition in bankruptcy and the transfer may well have been avoidable under 11 U.S.C. § 547(b).

However, the date of the fixing of the lien of Dressler Motors, Inc. on the Debtor's wages is the effective date of the initial transfer and will control the commencement of the 90-day time period for purposes of determining preferences which are avoidable under 11 U.S.C. § 547(b). In Virginia, the execution of a writ of *fieri facias* establishes a lien on intangibles from the time it is delivered to the officer charged with serving it. Va.Code § 8.01–501 (1984 Repl.Vol.); *Pischke v. Murray,* 11 B.R. 913, 916 (Bankr.E.D.Va.1981). Thus, in the case at bar, the execution was delivered to the sheriff on October 13, 1986, and at that time, under Virginia law, the lien of the execution attached to the wages of the Debtor. Neither the fact that the funds representing wages withheld were not actually paid over by the Alleghany County Circuit Court until December 29, 1986, nor the fact that the return date on the garnishment summons was not until January 12, 1987, is relevant to a determination of the issue of when the transfer took place for purposes of preference avoidance.

The facts of this case are nearly identical to the facts set forth in *In re Lamm,* 47 B.R. 364 (E.D.Va.1984). In that case, Judge Kellam, for the Eastern District of Virginia, held that the writ of *fieri facias* creates the lien and it dates from the dates of its delivery to the officer required to serve it. The garnishment summons is merely notice of the lien. *Id.* at 368.

The holding in *Lamm* is that the filing of a petition in bankruptcy does not affect the lien of an execution and garnishment summons which is issued more than ninety (90) days before the filing of the bankruptcy petition. *Id.* at 369–70. However, the *Lamm* holding does not completely resolve the issue in the case at bar since in *Lamm* the evidence was clear that all of the garnished wages were removed from the possession and control of the debtor *more* than ninety (90) days before the petition in bankruptcy was filed. Thus, in *Lamm* all of the garnished wages were earned by the debtor more than ninety (90) days prior to his petition.

As pointed out by Judge Mannes in *In re Krumpe,* 60 B.R. 575 (Bankr.D.Md.1986), in those cases where some of the garnished wages are earned by the debtor *within* the ninety (90) days prior to his petition, 11

U.S.C. § 547(e)(3) plays an important part in determining which portion of the garnished wages might be subject to a successful preference attack under 11 U.S.C. § 547. 11 U.S.C. § 547(e)(3) provides: "For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred."

 There is, apparently, a split of authority as to when a garnishment lien divests a debtor of ownership of his wages. Judge Goldhaber, Bankruptcy Judge for the Eastern District of Pennsylvania, surveyed the case law on this issue in *In re Tabita*, 38 B.R. 511 (Bankr.E.D.Pa.1984). *In re Mayo*, 19 B.R. 630, 632–33, (E.D.Va. 1981), which is cited in *Tabita*, holds that a debtor does not acquire an interest in his wages until he earns them and that the transfer occurs on the date the wages are earned. Based upon the line of cases of which *Mayo* is a part, Judge Goldhaber holds in *Tabita* that until the employee has performed the services he has not acquired rights in his wages and a transfer has not occurred for purposes of 11 U.S.C. § 547(b). *Tabita* at 515. Judge Mannes reaches a similar result in Maryland in *Krumpe*. The Virginia statutes pertaining to garnishment parallel the statutes of Pennsylvania and Maryland and the impact of 11 U.S.C. § 547(e)(3) is the same. The cases which hold to the contrary are discussed and distinguished in both *Tabita* and *Krumpe*. This Court is of the opinion that the *Tabita* and *Krumpe* decisions are consistent with the holdings in *Lamm* and *Mayo* and should be followed in the case at bar. Thus, notwithstanding the fact that the lien resulting in notice of garnishment is obtained outside the preference period, any wages earned by the debtor within the preference period which are subject to the lien of a *fieri facias* are avoidable by the trustee under 11 U.S.C. § 547(b).

In this case, the Trustee has declined to pursue the preference thus giving rise to rights of the Debtor to pursue the preference under 11 U.S.C. § 522(h). *Mayo, supra*, p. 633. However, the Debtor has offered no evidence to show what wages, if any, the Debtor earned during the ninety (90) days prior to the filing of the bankruptcy petition. December 12, 1986, is the date of the beginning of the 90–day period in this case. Therefore, this Court holds that any wages of the Debtor which were earned by the Debtor after December 12, 1986, and were paid over to Dressler pursuant to the lien of its *fieri facias* are preferential transfers which are avoided under 11 U.S.C. § 547(b) and are to be returned to the Debtor by Dressler. All other wages of the Debtor paid over to Dressler are not avoidable and shall be retained by Dressler in satisfaction of its lien. Further evidentiary hearing shall be held to determine the amount, if any, of the garnished wages to be returned to the Debtor.

An appropriate order will issue implementing this Memorandum Opinion.