## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SHIELDS & OTHERS *v.* MAHONEY & OTHERS.

April 1, 1897.

Absent: RIELY, J.

1. INSOLVENT DEBTOR—*Assignee of chose in action—Lien of fieri facias.*—An insolvent debtor may, notwithstanding his insolvency, make a valid assignment of a chose in action owned by him, and the *bona fide* assignee for value of such chose in action takes title thereto superior to the lien of a *fieri fiacias* against such debtor. It is immaterial whether the debtor intended to commit a fraud in making the assignment or not, if the assignee has no notice of such intent, or of the existence of the *fi. fa.* and pays value.

Appeal from decrees of the Circuit Court of the city of Norfolk, pronounced February 13, 1895, and May 24, 1895, in a suit in chancery wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*Borland & Wilcox,* for the appellants.

*W. L. Williams, Samuel L. Davis* and *G. M. Dillard,* for the appellees.

KEITH, P., delivered the opinion of the court.

J. and E. Mahoney having obtained a judgment against Frank Shields, sued out an execution upon it which they placed in the hands of the sergeant of the city of Norfolk to be levied, and thereby acquired a lien by virtue of section

3601 of the Code on all the personal estate of or to which their debtor was possessed or entitled "not capable of being levied on under section 3587, except such as is exempt under the provisions of chapter 178, and except that as against an assignee of any such estate for a valuable consideration, or a person making a payment to the judgment debtor, the lien by virtue of this section shall not affect him, unless he had notice thereof at the time of the assignment or payment, as the case may be." Code, sec. 3601. The judgment creditor having thus acquired a lien, caused his debtor to be summoned before a commissioner in chancery as provided by section 3603 of the Code. Upon the proceedings before the commissioner it appeared that Mrs. Elizabeth White was indebted to Shields in the sum of $1,250, evidenced by a negotiable note payable to Shields, which he had hypothecated with the Bank of Commerce of the city of Norfolk to secure his note for the sum of $600. Shields was at this time indebted to the firm of Dilworth & Co., composed of William J. Dilworth and John J. Burke, in the sum of $380; and thereupon, Shields, pending the proceedings before the commissioner, approached Dilworth & Co. and proposed to them that they should pay to the Bank of Commerce the note for $600, credit him by the amount of his debt to them of $380, pay to him the difference between the $600 due the bank and the debt from Shields to them, and the face value of the note of Mrs. Elizabeth White, which the bank held, and take an assignment of that note to themselves. Dilworth & Co. had made unavailing efforts to collect their debt from Shields, who was known to be insolvent. The note which he offered to transfer was well secured, and they readily assented to the proposed arrangement. They paid the $600 to the bank. They paid $270 to Shields. They credited him by the amount of his indebtedness to them, and now claim to hold the note as assignees or endorsees for valuable consideration without notice of the lien of the execution of Mahoney & Co.

The attempt to collect the debt by the proceedings before the commissioner having proved unavailing, the Mahoneys and the Mahoneyville Distilling Co., suing for themselves and all other creditors of Frank Shields who have liens or claims upon his property, filed their bill in the Circuit Court of the city of Norfolk. In it they state the facts above set forth, ask that the lien of their writ of *fieri facias* may be enforced and that the transfer of the note of $1,250 due by Elizabeth White, in which Frank Shields is the payee and which Dilworth & Co. now claim to hold as assignees for value, may be declared fraudulent and void.

Dilworth & Co. answered the bill, denied the charges of fraud, claim that they are *bona fide* holders of the note for value and without notice of any lien; admit that Shields was insolvent at the date of the transaction with him, and that they knew it, '' and therefore gladly, eagerly, promptly and reasonably availed themselves of the request of Shields to pay the debt of $600 to the Bank of Commerce, and to take a transfer of the note of $1,250 held as collateral by the Bank of Commerce.'' They admit that they paid the bank the sum of $600; that they paid to Shields $270, which together with their account against him of $380 made up the sum of $1,250 paid for the note,'' and frankly state ''were thus enabled to save their claim of $380 against an insolvent debtor.''

The cause came on to be heard before the Circuit Court upon the pleadings and proofs, and that court held the transaction to be fraudulent, and required Dilworth & Co. to pay to the creditors of Frank Shields named in the decree the sum of $725, with interest on $650, part thereof, from November 27, 1894, till paid, being the amount of Mrs. White's note . less the sum of $600 paid by Dilworth & Co. to the Bank of Commerce, ana from that decree Dilworth & Co. obtained an appeal and *supersedeas* from one of the judges of this court.

We are of opinion that the decree is erroneous. In order

to invalidate the assignment of the note by Shields to Dilworth & Co., there must have been an intent upon the part of Shields to hinder, delay, and defraud his creditors, and that intent must have been participated in or known to his assignee.    That Shields was insolvent and that his insolvency was known to the appellants is true, and these facts would be proper evidence to be considered in connection with other circumstances of an inculpatory character to fasten upon the transaction the imputation of fraud; but standing alone, as they do in this record, they are wholly insufficient to warrant such a conclusion.    It would be harsh and oppressive alike upon the debtor and the creditor to hold that the former's insolvency forbade all dealing and intercourse with him upon pain of having transactions to which he might be a party annulled as fraudulent.    It has been held that the industry and business capacity of the debtor were elements of value to his creditors of which they could not by law be justly deprived.

"It has been contended," says Judge Marshall in *Sturges* v. *Crowninshield*, 4 Wheat. 198, "that as a contract can only bind a man to pay to the full extent of his property, it is an implied condition that he may be discharged on surrendering the whole of it.

"But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions.    Industry, talents, and integrity, constitute a fund which is as confidently trusted as property itself.    Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation."

But if the debtor's insolvency renders him incapable of contracting without subjecting those who deal with him to question and suspicion, his energies are impaired and his earning power diminished, if not destroyed.    In times of disaster and depression, which at intervals befall all communities,

such a rule, if enforced, would lead to utter stagnation and ruin.

The case of *Harvey* v. *Anderson*, 24 S. E. R., 914, is somewhat analogous to the one under consideration. A deed of trust executed by an insolvent to secure some of his creditors provided for the payment of the surplus to the grantor. This provision was held to be not of itself evidence of fraudulent intent. Judge Buchanan, speaking for the court in that case, uses the following language: "Whatever may be the rule in New York, whose decisions are cited to sustain the opposite view, the rule in this State, and generally, it is believed, does not hold such a deed to be *per se* fraudulent. It is difficult to understand how the insertion of a provision in a deed of trust requiring that to be done which, if it had been omitted, the law would have implied and required, should ever have been considered conclusive evidence of a fraudulent intent. Our statute (section 2442 of the Code of 1887) provides that the trustee 'shall pay the surplus, if any, to the grantor, his heirs, personal representatives or assigns;' and, independent of the statute, the grantor or his representatives were entitled to the surplus."

The transaction would have been upheld had Shields conveyed this note to a trustee to pay, first, the debt due to the bank; secondly, the debt to Dilworth & Co. and the balance, if any, to himself, which would have been in all substantial respects what was done in this case. The transaction disclosed in this record so far from being reprehensible is, in the absence of a fraudulent intent on the part of the debtor, participated in, or at least known to, his assignee, beneficial to all, and is to be approved rather than condemned.

That Dilworth & Co. were honest creditors of Shields; that they paid his debt justly due to the bank; and that they paid to him $270 in money is not denied; and as there is no evidence implicating them in any misconduct in the transac-

tion, or tending to show that they had notice of the lien of the appellees by virtue of their writ of *fieri facias*, it follows that their title to the note in controversy has not been successfully impeached.

The decree of the Circuit Court must be reversed.

*Reversed.*