**In the Matter of Burroughs Allen WALTRIP, Jr., Bankrupt.**

**No. 24160.**

United States District Court
E. D. Virginia,
Norfolk Division.

Nov. 8, 1966.

George F. Darden, Jr., Virginia Beach, Va., for bankrupt.

Kaufman, Oberndorfer & Spainhour, Norfolk, Va., for Virginia Nat. Bank.

C. J. Collins, Norfolk, Va., for trustee.

Alexander P. Smith, Norfolk, Va., trustee in bankruptcy.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

On June 7, 1966, the bankrupt filed his voluntary petition and was duly adjudicated a bankrupt. Attached to his schedules was a certified copy of a homestead deed which had been duly recorded in the Clerk's Office of the City of Virginia Beach on May 23, 1966—fifteen days prior to bankruptcy. The total value attributed to the miscellaneous items claimed exempt under the homestead deed was $152.34. Section 190 of the Constitution of Virginia grants to every householder or head of a family the privilege of setting aside real and personal property, or either, including money and debts due him, to the value of not exceeding $2,000.00, to be selected by him. Under § 34–17 of the Code of Virginia, 1950, it is provided that the real or personal estate may be set apart at any time before it is subjected to sale or otherwise under judgment, decree, order, execution or other legal process, *provided that any person who files a voluntary petition in bankruptcy may set it apart before or on the same day that he files his petition but not thereafter.*

Included among the assets claimed exempt under the homestead deed aggre-

gating a valuation of $152.34 is the following:

"Equity in 1963 Volkswagen Station Wagon—$7.84"

Among the creditors listed as holding securities was the Virginia National Bank as the holder of a lien upon the 1963 Volkswagen, with the amount of the debt being $542.16 and the value of the security being listed as $550.00. Thus it is apparent that the bankrupt wanted to set apart as exempt his equity in the automobile.

At the first meeting of creditors of said bankrupt on June 21, 1966, the referee expressed the view that the value assigned was unrealistic. However, it does not appear that any order was entered at that time either allowing or disallowing the claimed exemption. On June 29, 1966, the Virginia National Bank filed a petition for abandonment of said automobile alleging, among other things, that the bank held a lien on said vehicle pursuant to a duly recorded lien on a certificate of title issued by the State Highway Department of the State of Texas.[1]

The court appraiser valued the automobile at $700.00. Subsequently, with the consent of the bankrupt and the claimed lienholder, the vehicle was sold at private sale and realized the sum of $525.00.

A question arose as to the validity of the alleged lien held by the bank. On July 7, 1966, prior to the entry of any order with respect to said lien, the bankrupt orally moved for leave to amend the homestead deed previously recorded, for the purpose of correcting the valuation. The motion was orally denied on the ground that § 34–17 of the Code of Virginia did not permit the property to be set apart as exempt *after* the petition

in bankruptcy had been filed. On July 12, 1966, an order was entered declaring the bank's alleged lien as invalid and directing the sale of the vehicle as an asset of the bankrupt estate free and clear of liens. The Virginia National Bank has filed a petition for review of this order but, before passing on same, we must consider the bankrupt's claim on review which arises from an order entered on July 13, 1966, which allows the claimed homestead to the extent of $7.84, orders the vehicle sold free and clear of liens, and denies the previously made motion to amend the homestead deed.

Section 192 of the Constitution of Virginia vests in the General Assembly of Virginia the authority to prescribe the manner and conditions on which a homestead may be claimed. It is likewise apparent, from the provisions of § 193 of the Constitution of Virginia and § 34–21 of the Code of Virginia, that additional exemptions, not exceeding a total valuation of $2,000.00 during a lifetime, may be set apart as exempt under successive homestead deeds.

■ The issue in this case is whether § 34–17 of the Code of Virginia prohibits an amendment to the homestead deed after bankruptcy, where the sole purpose of the amendment is to correct the *valuation* claimed therein. We reach this point without discussing other matters involving the Soldiers' and Sailors' Civil Relief Act and the validity of the lien, including an interpretation of the newly enacted Uniform Commercial Code.

Irrespective of the validity of the lien insofar as the rights of the trustee in bankruptcy may be concerned, the lien was admittedly valid as between the bank and the now bankrupt. This is not a case of fraud in asserting a valuation of $7.84 in the equity of the motor ve-

---

1. The automobile bore Texas license plates despite the fact that the bankrupt, a member of the Armed Forces, moved from Corpus Christi, Texas, to Virginia Beach, Virginia, on August 29, 1964. The application for lien in favor of the bank, all in proper form, was mailed to Texas and received several weeks prior to bankruptcy. The new certificate of title was actually issued two days after bankruptcy, but the lien shown thereon was dated April 27, 1966. Under Texas law the lien has priority according to the date of the receipt of the application which, in this case, was May 26, 1966.

hicle. And while the court appraiser valued the automobile at $700.00, the proceeds of the sale amounted to only $525.00. Thus it appears that the bankrupt's evaluation of the asset at $550.00 was approximately correct.

██ That any construction of the law pertaining to homestead deeds must be liberally treated in favor of the debtor is established in Goldburg Co. v. Salyer, 188 Va. 573, 50 S.E.2d 272, where a shifting stock of merchandise, admittedly not subject to exemption under a homestead deed, was destroyed by fire and, thereafter, Salyer recorded a homestead deed claiming the proceeds of the fire insurance policies exempt to the extent of $2,000.00. The exemption was allowed, the court pointing out that the shifting stock of merchandise had ceased to exist and that the exemption was claimed in "money and debts due". Moreover, we feel that the homestead deed applies to specific interests in property set apart, and not to the valuation thereof, except as to the limitation of $2,000.00.

█ The referee was in error in not permitting the amendment to correct the valuation. The mere fact that the equity may have increased by the approximate sum of $518.00 does not destroy the exemption; it only serves to increase the amount consumed by the bankrupt during his lifetime. This is not a case in which an amendment is sought for the purpose of setting apart an asset not previously claimed in the homestead deed; nor is it a situation in which the homestead deed was not executed and recorded prior to bankruptcy. In re Swift, 96 F.Supp. 44 (W.D.Va., 1950).

█ Under 11 U.S.C. § 24 exemptions allowed by state and federal laws are recognized, but it is further provided that *"no such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this title for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess".* The purpose of the latter portion of 11 U.S.C. § 24 was to make it clear that a bankrupt should not profit at the expense of his creditors from the efforts of the trustee in undoing the bankrupt's own acts. 3 Remington on Bankruptcy, § 1276, p. 151. Again, this is not a case of permitting a bankrupt to benefit by any wrongful act. The lien placed upon the title certificate was not a preferential transfer. There was no fraud, fraudulent transfer, or concealment on the part of the bankrupt or the bank. Assuming arguendo the correctness of the referee's holding that the bank's lien was invalid by reason of the bankrupt's failure to register his automobile in Virginia and obtain a Virginia certificate of title with the bank's lien shown thereon,[2] at best this is a voided transfer by way of security only and Section 6 of the Bankruptcy Act seems to infer that an exemption allowance may be made out of the excess.

█ The purpose of § 34–17 of the Code of Virginia was not to limit the householder or head of a family to the precise valuation fixed therein. We think that, in accordance with General Order 11, the referee should have permitted the amendment after first requiring the bankrupt to state specifically in writing the reason for the evaluation of $7.84, rather than $550.00. It is in keeping with the intent and spirit of the Bankruptcy Act. In re Skelton, 299 Fed. 606 (D.C.Ga., 1924); In re Fowler, 35 F. Supp. 9 (E.D.Pa., 1940). To hold otherwise would unduly restrict the householder in affixing to each parcel or article "his cash valuation thereof". The purpose of the "cash valuation" is to enable creditors to ascertain, by inspection of the different articles and the prices affixed thereto, whether the debtor is

---

**2.** No intimation as to the correctness of the referee's ruling on this point is to be drawn from this assumption.

making a fair and honest claim of homestead, or whether he is giving an underestimate of its value, and thereby securing to himself property that should be subjected to the payment of his debts. In re Wilson, 108 F. 197 (W.D.Va., 1901). In the latter case, where no separate cash evaluation was made, the bankrupt was permitted to amend his schedules. We do not believe that the 1944 amendment to § 34–17 of the Code of Virginia precludes any and all amendments to a homestead deed where the item is claimed exempt and the controversy rests upon the valuation thereof. The claiming of a mere "equity" may tend to confuse the situation as the Virginia law permits a claimed exemption in "the personal estate so selected", but we believe that it is sufficient under the liberal interpretation which must be accorded to homestead deeds. Samuels v. Delucchi, 9 Cir., 286 F.2d 504; Curzon v. Dulgarian, 9 Cir., 287 F.2d 30.

We recognize that the allowance of an amendment will probably result in the Virginia National Bank receiving the proceeds of said sale as the bank holds a homestead waiving obligation. Nevertheless, this is a matter of contract between the bank and the bankrupt.

■ Other than the actual cost, if any, of preserving the vehicle and the actual expense of sale, which was with the consent of the bankrupt, no administration expenses or fees may be charged against the proceeds of the sale of the automobile, if the amended homestead deed is recorded and the bankrupt claims the vehicle or equity therein to the extent of $550.00, rather than $7.84 as previously claimed. 3 Remington on Bankruptcy, § 1320. The amendment should be treated as having been claimed on July 7, 1966, even though no written application to amend was filed at that time. As the referee clearly indicated that he would not consider any amendment if filed in writing, there was no need for the bankrupt to formalize his request in writing.