**In the Matter of ACORN ELECTRIC SUPPLY, INC., Alleged Bankrupt.**

**No. 262–72–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Sept. 19, 1972.

Louis H. Cohn, Norfolk, Va., for alleged bankrupt.

Stanford R. Peerless, Norfolk, Va., for petitioning creditor.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

This is a sequel to In re Acorn Electric Supply, Inc., 339 F.Supp. 785 (E. D.Va., 1972), which matter is now on appeal.

On April 14, 1972, after the entry of the final order in the prior case but ten (10) days before a notice of appeal was filed, the same three (3) petitioning creditors filed another involuntary petition in bankruptcy alleging that "within four months next preceding the filing of this petition the said Acorn Electric Supply, Inc., committed an act of bankruptcy, in that, it made or suffered a preferential transfer as defined in Subdivision a of Section 60 of the Bankruptcy Act, within four months of the filing of the original petition herein, having paid and transferred funds to the following creditor in the amount shown, being for an antecedent debt, while insolvent, the effect of which transfer will be to enable such creditor to obtain a greater percentage of its debt than some other creditors of the same class: Abolite Lighting, Inc. $72.-33."

No other act of bankruptcy is alleged in the present action.

The alleged bankrupt contends that, during the pendency of an appeal in the prior case, there is no right on the part of the same petitioning creditors to file another involuntary petition in bankruptcy, even though a different act of bankruptcy is alleged. We disagree, as it is abundantly clear that credi-

tors are not barred from alleging several acts of bankruptcy in one petition and, if one ground is valid, adjudication will follow. In re Thomas, 211 F.Supp. 187 (D.Colo., 1962), affirmed sub nom. Thomas v. Youngstown Sheet & Tube Co., 10 Cir., 327 F.2d 667, cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36.

■ It is next urged that the rule of *de minimis non curat lex* should be applied. While there is a great temptation to apply this principle of law, it is now settled that, since the 1952 amendment which eliminated the "intent to prefer," the size of any payment is of no consequence. 1 Collier on Bankruptcy, § 3.-203, p. 439, footnote 4.

As was the case in the prior proceeding, there is no dispute with respect to the facts. On October 24, 1971, Abolite Lighting, Inc.[1] obtained a judgment against the alleged bankrupt in the Civil Court of the City of Norfolk in the sum of $56.95. A writ of fieri facias was issued and placed in the hands of a proper officer on November 5, 1971. On the same date, a garnishee summons directed to Louis H. Cohn, garnishee defendant, was served, returnable to December 16, 1971. Said garnishee summons was also served upon the alleged bankrupt on November 8, 1971. On the return day of the garnishment, December 16, 1971, a judgment was entered against Cohn and he immediately paid the judgment and costs, same aggregating $72.33.

It follows that the involuntary petition in bankruptcy was filed within four (4) months after the "payment" of the judgment. The question is whether, under the circumstances related, the act of bankruptcy was committed when the judgment was paid on December 16, 1971.

■ Petitioners contend that the satisfaction of the judgment constitutes the second act of bankruptcy as proscribed by section 3a(2), that is, a preference as defined in sections 60a and 60b. Section 60a(1) defines, *inter alia*, a preference as a transfer of any property of a debtor on account of an antecedent debt while insolvent and within four months before the filing of the bankruptcy petition, the effect of which will enable such creditor to obtain a greater percentage of his debt than other creditors of the same class. The alleged bankrupt asserts, on the other hand, that the fixing of the execution lien upon its property is the only transfer we are concerned with, and it took place outside the four-month period. The case law is clear that it is the creation of a lien and not its enforcement which is critical to bankruptcy. See Metcalf v. Barker, 187 U.S. 165, 174, 23 S.Ct. 67, 47 L.Ed. 122 (1902). Once a creditor's security is perfected, he stands in a different class than the general creditors and satisfaction of his debt will not permit him to receive a greater percentage than creditors of the same class. Petitioners concede that if the execution lien was perfected outside the four-month period, then its satisfaction is not a preference. They argue, however, that it was not perfected within the meaning of the Bankruptcy Act.

■ Section 60a(2) provides that a transfer for the purpose of a preference takes place as to personalty when it becomes so far perfected that it cannot be defeated by a subsequent lien upon such property obtained by legal or equitable proceedings upon a simple contract. Section 60a(4) provides that a lien obtainable by legal or equitable proceedings upon a simple contract is a lien arising in the ordinary course of such proceedings upon entry or docketing of a judgment or decree, or upon attachment, garnishment, or some similar process. The question, then, is whether any subsequent judgment lien creditor could have defeated Abolite's execution lien at any time within the four-month period preceding bankruptcy. This question must be resolved by looking to state law. In Virginia the writ of fieri facias cre-

---

[1]. Abolite Lighting, Inc., was not represented by the same attorneys who represent the petitioning creditors. We, therefore, have no occasion to consider the principle *volenti non fit injuria* as applied in the prior case.

ates a lien on the leviable property of the judgment debtor from the time it is delivered to the officer to be executed, Va.Code, section 8–411. The fieri facias lien on the leviable property of the debtor ceases as of the return day of the writ, Va.Code, section 8–412. In addition, section 8–431 provides:

"Every writ of fieri facias shall, in addition to the lien it has under §§ 8–411 and 8–412 on what is capable of being levied on under those sections, be a lien from the time it is delivered to a sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ become, possessed or entitled, and which, from its nature is not capable of being levied on under such sections, except such as is exempt under the provisions of Title 34, and except that, as against an assignee of any such estate for valuable consideration, the lien by virtue of this section shall not affect him unless he had notice thereof at the time of the assignment."

■ This lien on the general assets of the judgment debtor covers choses in action and debts owed to the debtor by third parties. Section 8–441 provides garnishment procedures in aid of execution once the judgment creditor has a lien by writ of fieri facias. Section 8–444 makes it clear that service of the garnishment summons creates potential liability on the part of the garnishee for the amount garnished, if he disposes of the property. The garnishment summons itself cannot fix a lien on the particular property held by the garnishee. "A summons in garnishment creates no lien. It is a means of enforcing the lien of an execution placed in the hands of an officer to be levied." Knight v. Peoples Nat. Bank of Lynchburg, 182 Va. 380, 29 S.E.2d 364 (1944). This is consistent with section 8–431 which creates the general lien on the property. The legal right to the property exists at that point. Garnishment merely affords the judgment creditor a remedy against an-

other party, thus further making sure that the right will be effectively enforced. The remedy afforded by garnishment was designed simply to enforce this lien of execution. "The lien itself is as complete and perfect without (it) and with (it). It continues in full force, although the creditor should never resort to those remedies." Trevillian's Ex'ors v. Guerrant's Ex'ors, 31 Gratt. (72 Va.) 525 (1879).

The general lien on the unleviable property of a debtor has a long history in Virginia and remains substantially unchanged since it originally became effective in 1850. The general lien of a fieri facias was intended as a substitute for the writ of capias ad satisfaciendum by which the judgment creditor could reach the unleviable property of an insolvent debtor. The writ of capias ad satisfaciendum was executed against the body of the debtor who was put into prison until he took the oath of insolvency. Upon giving the oath the debtor surrendered everything of value owned by him to the creditor and title to all unleviable property became vested by operation of law in the creditor. Until the oath was taken the lien was inchoate or conditional; if the debtor died, or escaped, or was discharged without taking the oath, the lien was thereby discharged. As a substitute for this lien the legislature provided an equally effective remedy in aid of execution. The lien of fieri facias took effect immediately and is not inchoate or conditional. The early cases construing the statute make clear its intended purpose and effect as against subsequent judgment lien creditors.

In Puryear v. Taylor, 12 Gratt. (53 Va.) 401 (1855), Puryear obtained a judgment against R. H. Daly in 1844 and had several executions issued and returned no effects. On October 25, 1851, Taylor sued R. H. Daly and had an attachment by garnishment issued and served upon J. J. Daly, the garnishee. On March 11, 1853, Puryear sued out a garnishment by suggestion on his earlier lien. The court held the prior lien by

writ of fieri facias was superior to a garnishment attachment even though the garnishment attachment was served on the garnishee first. In Charron & Co. v. Boswell, 18 Gratt. (59 Va.) 216 (1868), a senior judgment creditor contended that his lien by writ of fieri facias was superior to that of a junior judgment creditor who happened to get his garnishment summons served upon the garnishee first. The court said:

"But the appellants (junior judgment creditors) insist that, by their proceedings by suggestion, they acquired a special lien on the fund in controversy, which entitles them to a preference over what they call the general lien of appellees (senior judgment creditors). Now this view is wholly inconsistent with the purpose and effect of the proceedings by suggestion. Those proceedings do not give any lien at all, general or specific. They are merely a means provided by law for the enforcement of a legal lien which already exists."

Petitioning creditors cite Lynch v. Johnson, 196 Va. 516, 84 S.E.2d 419 (1954), for the proposition that, "The proceeding of garnishment is in many respects similar to attachmment by levy, but as indicated, differs in at least one particular, that is, the creditor 'does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value.' " Petitioners assert that this language means that no perfected lien existed upon the funds in question here before the four-month period so that this payment during the four-month period constituted a preference. Their argument leads to the conclusion that a garnishment lien in Virginia cannot be effective for the purposes of a bankruptcy. However, the holding in Lynch can be distinguished from the issue presented here. In the first place, as has already been pointed out, garnishment in aid of execution does not create the lien because it dates from the delivery of the fieri facias to the sheriff. Secondly, Lynch was concerned with what property may be garnisheed rather than priorities between a lien by writ of fieri facias and a hypothetical judgment lien creditor. In Lynch, the proceeds of a life insurance policy were garnisheed but this was found to be improper because the judgment debtor had no clear, unequivocal right to the money. In other words, the writ of garnishment cannot create a lien where a judgment debtor had no right to the property in the first place. This is most clearly pointed out in the case of Bickle and others v. Chrisman's Adm'x, 76 Va. 678, 691 (1882). In Bickle the judgment creditor asserted the right to a fund which had been lawfully assigned by the debtor prior to service of the garnishment summons upon the garnishee, who later took a default judgment. The court said that the default judgment could not be given conclusive effect since the garnishee is a mere stakeholder and no lien can attach to property over which one has no right. The holding in that context is eminently fair, but it cannot be read to say that if there was a valid debt and the garnishee did deposit the money into the court then the lien would not be given full effect. For the purposes of bankruptcy the judgment lien need not be absolute, unequivocal or irrevocable. It need only be superior to the rights of a subsequent judgment lien creditor, and in Virginia the lien by writ of fieri facias is such a lien. See Charron & Co. v. Boswell, supra.

In Jackson v. Valley Tie & Lumber Co., 108 Va. 714, 62 S.E. 964 (1908), the court considered the effect of an attachment lien as it related to old section 67f which provided that all levies, judgments, attachments, or other liens obtained through legal proceedings within four months of bankruptcy were null and void. The trustee contended that an attachment received more than four months from bankruptcy was not an effective lien because it was incomplete and inchoate until perfected by judgment on the debt. The court rejected the line of cases which held the attach-

ment lien inchoate and accepted those cases which held that the lien of attachment is perfected by the levy. It then said that, "A judgment or decree in enforcement of this valid pre-existing lien is not the judgment or decree denounced by the bankruptcy act, which was plainly confined to judgments creating liens." It follows that if attachment liens are valid in Virginia for the purposes of bankruptcy, then liens by writ of fieri facias must also be valid since a prior existing fieri facias lien will defeat a subsequent attachment lien. See Puryear v. Taylor, supra.

■■ In Virginia the lien of fieri facias on choses in action can be defeated by an assignee for valuable consideration and without notice, Va.Code 8–431, Shields v. Mahoney, 94 Va. 487, 27 S.E. 23 (1897); Evans, Trustee v. Greenhow, 15 Gratt. (56 Va.) 153 (1859); Virginia Machinery & Well Co. v. Hungerford Coal Co., 182 Va. 550, 29 S.E.2d 359 (1944). This does not mean, however, that it makes the fieri facias lien on intangibles so defective that it cannot be perfected within the meaning of the Bankruptcy Act. The status of the trustee to upset alleged preferences has had a tortured history of statutory construction. At present, Congress has designated the trustee a judgment lien creditor upon a simple contract and rejected the bona fide purchaser test, except for real estate transfers. Under section 8–431 of the Virginia Code, the only person who can defeat the fieri facias lien is a bona fide purchaser or assignee for value without notice. We therefore hold that the satisfaction of Abolite's preexisting execution lien, during the four-month period preceding the filing of the bankruptcy petition, was not a preference.

■ This holding necessarily means that the Virginia execution lien on intangibles is perfected for bankruptcy when the writ of fieri facias is delivered to the officer to be executed. It is recognized that this conflicts with two recent district court opinions in Virginia, holding the lien effective from the date the garnishment summons is delivered to the garnishee. See In re Cruff,[2] 280 F. Supp. 846 (W.D.Va., 1968); First National Bank of Norfolk v. Norfolk and Western Railway, 327 F.Supp. 196 (E. D.Va., 1971). In the present case the fieri facias was delivered to the officer and the garnishment summons was served on the same day so that under either theory the lien was perfected before the four-month period. Traditionally, garnishment has been used for two different purposes; one is in aid of execution after judgment and the other is in aid of attachment before judgment. In the former the creditor has already established the right to recover and in the latter the issue of liability is yet to be litigated. The Virginia Code sections dealing with the effective dates for execution and attachment liens are different. Section 8–431 provides that the lien by fieri facias on the debtor's intangibles dates from the delivery of the writ to the sheriff. Section 8–441, which provides for post-judgment garnishment, states that the garnishee is personally liable from the date the "summons" is served, but says nothing about a lien on the property itself. It is interesting to note that the term "garnishment" is only used in connection with garnishment in aid of execution. The Virginia Code uses the general term "attachment" when speaking of pre-judgment garnishment. Section 8–545 provides that the lien of attachment or pre-judgment garnishment is effective from the time a "copy of the attachment" is served upon the garnishee, "co-defendant." On the other hand, garnishment post-judgment is instituted by serving a "garnishment summons." It would certainly appear that the two code chapters dealing with garnishment in aid of the fieri facias lien on unleviable

2. In re Cruff relies upon In re Corbin, 350 F.2d 514 (6 Cir., 1965), decided on the basis of Ohio law. The present case is controlled by Virginia law.

property and garnishment by attachment lien provide for their taking effect at different times.

For the foregoing reasons it is ordered that the involuntary petition in bankruptcy be, and it hereby is, dismissed.