In re Orville Glen **PENNINGTON**, Debtor.

**HOMEOWNER'S FINANCE CORPORATION, Plaintiff,**

v.

**Orville Glen PENNINGTON f/d/b/a Orville Pennington Excavating, Dale City Tool Rental, and Orville Pennington Construction, and Spartabrook Construction Corporation, Defendants,**

**and**

**Ethan Allen Turshen, Trustee.**

**Bankruptcy No. 82–00887–A. Adv. No. 83–0130A.**

United States Bankruptcy Court, E.D.Virginia, Alexandria Division.

March 18, 1985.

Roy B. Zimmerman, Alexandria, Va., for debtor.

Paul B. Ward, McLean, Va., for plaintiff.

Gordon P. Peyton, Alexandria, Va., for Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter arises upon the filing of a complaint for determination of priority and extent of lien by Homeowner's Finance Corporation ("creditor"), a judgment creditor in these proceedings. In lieu of a hearing, the parties agreed to briefing the issues in this matter and submitting a stipulation of facts.

The facts, as stipulated to by the parties, are as follows. Based on the use of construction equipment by Orville Pennington ("debtor") which was leased to debtor by creditor as well as debtor's failure to make the rental payments, the Circuit Court of Prince William County, Virginia entered judgment against debtor in favor of creditor in the principal amount of $5,623.22. The state court also awarded interest at the rate of 9.5% *per annum* from June 1, 1980 until March 19, 1981. The judgment order also indicates that interest on the principal would accrue at 8% *per annum* from March 19, 1981 until the date the

judgment was paid in full. Additionally, the state court awarded counsel fees in favor of creditor in the amount of $950.00.

On September 8, 1981, a writ of *fieri facias* was delivered to the Sheriff of Prince William County, Virginia for execution against the personal estate of debtor pursuant to the state court judgment. According to state law, a writ of *fieri facias* shall be a lien on all the personal estate of the judgment debtor including intangible, unleviable property. 1950 Code of Virginia § 8.01–501 (Repl. vol. 1984). On September 24, 1981, creditor discovered that debtor had an account receivable of approximately $5,000.00 due and owing from Spartabrook Construction Corporation ("Spartabrook").

On November 10, 1981, a suggestion for summons in garnishment against First and Merchants National Bank was filed by creditor. An order of payment was entered on February 2, 1982 wherein the sum of $342.75 previously paid into state court by First and Merchants National Bank was paid to creditor.

Spartabrook was served by a garnishment petition with an original return date of May 28, 1982. The return date subsequently was continued to June 25, 1982. Spartabrook failed to appear on that date and a show cause order was prepared as to Spartabrook. Prior to entry of that order, debtor filed a petition under Chapter 7 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* ("the Code"), on July 6, 1982.

At the time of filing the petition in bankruptcy, debtor was indebted to creditor in the amount of $7,387.45 pursuant to the state court ruling. Debtor's schedules, as amended, list a debt due debtor from Spartabrook in the amount of $4,700.00 and a debt due debtor from Gale Construction Company ("Gale"), in the amount of $3,800.00.

Debtor's original Homestead Deed claimed neither the Spartabrook nor the Gale receivables as being exempt. On August 5, 1982, debtor filed an amended Homestead Deed in the Circuit Court of Prince William County, Virginia claiming $3,831.00 of "garnishment funds being held by the Circuit Court of Prince William County" as exempt. The amended Homestead Deed indicated .that the sum of the amounts claimed as exempt in the original Homestead Deed and in the amendment was not in excess of $5,000.00 [1].

On August 20, 1982, Gale paid to debtor the $3,800.00 due on the account receivable. Approximately two months later, October 13, 1982, debtor turned over the funds paid pursuant to the Gale account to the Trustee in Bankruptcy. In March 1983, creditor filed a complaint praying that this Court find that its lien of the writ of *fieri facias* attached to the Gale and Spartabrook accounts, according creditor an interest in those accounts superior to that of the Trustee in Bankruptcy. Creditor's complaint named debtor, the Trustee in Bankruptcy and Spartabrook as defendants. Spartabrook has never answered the complaint, nor made any appearance in these proceedings.

The parties have agreed that there are two issues in this matter: (1) whether the September 8, 1981 lien of the writ of *fieri facias* has priority over the trustee's claim to the $3,800.00 Gale receivable and (2) whether the amendment to debtor's Homestead Deed purporting to exempt a portion of the Spartabrook account receivable is effective to defeat creditor's lien of the writ of *fieri facias*. These issues shall be addressed seriatim.

Creditor cites section 8.01–501 of the Virginia Code as authority that a writ of *fieri facias* becomes a lien on all the personal estate of the judgment debtor from the time the writ is delivered to the sheriff. This lien covers the entire personal estate

---

1. The Commonwealth of Virginia elected to "opt out" of the exemptions provided by Congress under 11 U.S.C. § 522. *See* note 2 *infra*. A householder or head of a family in Virginia is limited to exempting real or personal property in a total value not to exceed $5,000.00 as a homestead exemption. 1950 Code of Virginia § 34–4 (Repl. vol. 1984).

of the debtor including property which is not leviable. Thus, creditor argues that its lien covers the Gale account receivable, citing the opinion rendered in *In re Acorn Elec. Supply, Inc.*, 348 F.Supp. 277 (E.D. Va.1972), to illustrate that a lien by writ of *fieri facias* will be superior to the interest of a Trustee in Bankruptcy if the lien is "superior to the rights of a subsequent judgment lien creditor ..." 348 F.Supp. at 281.

Creditor notes that the *Acorn* court further held that only a bona fide purchaser or assignee for value without notice may defeat the *fieri facias* lien. *Id.* at 282. Although creditor agrees the Gale funds were assigned to the trustee, creditor argues that the trustee had notice of the lien in that it was described in the proof of claim filed September 16, 1982, one month prior to the assignment. Both parties agree, however, that the lien of *fieri facias* does not attach to property exempt under Title 34 of the Virginia Code. Thus, creditor argues that the efficacy of the amendment to debtor's Homestead Deed is determinative as to whether creditor's interest in the Gale account receivable is superior to that of the trustee. Creditor's argument as to why the amendment to the Homestead Deed is not effective will be addressed hereafter.

Debtor puts forth two main arguments as to why the lien of *fieri facias* does not give creditor a position superior to that of the trustee. Initially, debtor contends that the lien of *fieri facias* ceases on the return date, ninety days from the date of issue. Thus, because creditor did not sue for a new writ and the lien expired by its own terms, creditor has no interest in the Gale account superior to that of the trustee. Additionally, debtor reads section 8.01–501 of the Virginia Code to give a lien only on property acquired by a judgment debtor between the date the writ was delivered to the sheriff and the return date of the writ. Because the Gale account receivable was due and owing prior to the former date, debtor argues the account receivable was never covered by the lien.

Debtor's second argument as to why creditor's interest in the Gale account receivable is not superior to that of the trustee is that the account receivable was not reached by the lien of *fieri facias* because of the territorial limits placed on the effectiveness of the lien by Virginia law. Section 8.01–481 of the Virginia Code states that the lien on property not capable of being levied on extends "throughout the limits of the Commonwealth." 1950 Code of Virginia § 8.01–481 (Repl. vol. 1984). Because Gale is located in Kensington, Maryland and held on its books a debt due debtor, debtor argues that the situs of the debt is in Maryland. Thus, debtor contends that the lien of *fieri facias* did not extend to the situs of the debt and was of no effect as to the monies paid by Gale to the debtor.

Before the Court discusses the merits of the parties' arguments regarding the first issue, the parties positions respecting the efficacy of debtor's amendment to his Homestead Deed should be outlined. Although creditor recognizes a debtor's ability to amend a Homestead Deed to further describe or to correct values of properties contained in the original Homestead Deed, creditor states that there is no authority which would allow an amendment to a Homestead Deed to set apart property not already described in the original Homestead Deed.

Creditor further argues that even if such authority existed, debtor's amendment in this instance is faulty and ineffective. Creditor maintains that debtor's amendment seeks only to exempt property described as any funds held by the Circuit Court for Prince William County, Virginia that result from garnishment. The only funds so held were proceeds from a garnishment against the First and Merchants National Bank. Six months prior to debtor's amendment, the funds had been paid to creditor pursuant to court order. Thus, creditor's point is that even if the amendment is allowed it does not identify the Spartabrook receivable, nor any other property in existence.

Debtor cites *Oppenheimer v. Howell*, 76 Va. 218 (1882), as authority that a debtor may supplement his Homestead Deed to exempt "after-acquired" property up to the maximum amount allowed by statute. 76 Va. at 222. Additionally, debtor maintains that because of the substantial right conveyed by a Homestead Deed the Virginia Constitution provides that the homestead exemption "shall be construed liberally . . ."

■ Debtor is correct that courts should construe liberally the law pertaining to Homestead Deeds in favor of debtors. The law is equally clear, however, that there are certain strict requirements in a bankruptcy setting which must be observed. Section 34–17 of the Code of Virginia requires that a debtor's Homestead Deed be filed before or on the same day as the debtor's petition in bankruptcy. 1950 Code of Virginia § 34–17 (Repl. vol. 1984). Additionally, in *Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir.1982), the Fourth Circuit Court of Appeals ruled that debtors must strictly comply with the provisions of the Virginia homestead laws in order to claim exemptions for bankruptcy purposes[2]. As a result, although there is no doubt but that a Homestead Deed may be amended to correct descriptions or values of properties listed in the original Homestead Deed, the law is equally clear that an amendment to a Homestead Deed may not set apart additional items not included in the original Homestead Deed. *In re Waltrip*, 260 F.Supp. 448, 451 (E.D.Va.1966);

*In re Redmon*, 31 B.R. 756, 759–60 (Bankr. E.D.Va.1983); *In re Sutphin*, 24 B.R. 149, 149–50 (Bankr.E.D.Va.1982). Thus, debtor's attempt to exempt the Spartabrook account receivable by amending the Homestead Deed is ineffective and does not exempt the account receivable from creditor's lien of *fieri facias*.

■ As described above, creditor argues that the efficacy of debtor's amendment to the Homestead Deed is determinative of the priority of liens issue. This, however, is not the case. Section 8.01–501 of the Virginia Code clearly provides that a writ of *fieri facias* shall be a lien "on all the personal estate of or to which the judgment debtor is . . . possessed or entitled." 1950 Code of Virginia § 8.01–501 (Repl. vol. 1984). Debtor admits in his brief that the amounts were due debtor at the time the writ was delivered to the sheriff. Because the accounts receivable were intangible property of debtor, creditor's lien would have been perfected when the writ was delivered to the sheriff. *In re Acorn Elec. Supply, Inc.*, 348 F.Supp. 277, 282 (E.D.Va. 1972).

■ There would appear, however, two problems with creditor's lien which may prevent creditor from having an interest in the Gale and Spartabrook accounts receivable superior to that of the trustee. The initial problem which apparently confronts creditor is contained in section 8.01–505 of the Virginia Code[3]. Section 8.01–505 clearly provides for the cessation of a lien of *fieri facias* on intangible property. 1950

---

2. In the Bankruptcy Reform Act of 1978, Congress provided that the States could create their own scheme of exemptions, thereby opting out of the federal scheme. 11 U.S.C. § 522(b)(1). The Virginia General Assembly enacted § 34–3.1 of the Virginia Code in 1979, denying debtors in Virginia the opportunity to use the federal exemption scheme. 1950 Code of Virginia § 34–3.1 (Repl. vol. 1984). The Virginia Homestead exemption is embodied in Title 34 of the Virginia Code of 1950 as amended. 1950 Code of Virginia § 34–1 *et seq.* (Repl. vol. 1984).

3. 1950 Code of Virginia § 8.01–505 (Repl. vol. 1984) provides:
   —The lien acquired under § 8.01–501 on intangibles shall cease whenever the right of the

judgment creditor to enforce the judgment by execution or by action, or to extend the right by motion, ceases or is suspended by a forthcoming bond being given and forfeited or by other legal process. Furthermore, as to all such intangibles the lien shall cease upon the expiration of the following periods whichever is the longer: (i) *one year from the return day of the execution pursuant to which the lien arose,* or (ii) if the intangible is a debt due from, or a claim upon, a third person in favor of the judgment debtor or the estate of such third person, one year from the final determination of the amount owed to the judgment debtor. (Emphasis added.)
*Id.*

Code of Virginia § 8.01–505 (Repl. vol. 1984). In the instant case, debtor's schedules indicate the amounts due and owing debtor at the time his petition was filed. Additionally, there is no indication from Spartabrook or Gale of a dispute as to whether the amounts are owed[4]. As a result, the applicable period is that contained in section 8.01–505(i)[5]. In this case, the return day was December 7, 1981. Thus, the argument might be made that the lien expired under state law on December 7, 1982. Such a problem is, in fact, illusory. In an unpublished opinion of the United States District Court for the Eastern District of Virginia, the District Court determined that the filing of a petition in bankruptcy maintained the status quo existing at the time of the filing. *In the Matter of Vail W. Pischke*, No. 76–432–A, slip. op. at 7–8 (E.D.Va. Nov. 5, 1981). That is, if a creditor's lien is extant under state law prior to commencement of the bankruptcy, the lien remains viable even if under the terms of the law creating the lien it would expire absent some action of the creditor. *Id.* at 7. For example, in the instant case, the creditor would not be obliged to seek relief from the stay in order to seek a new writ of *fieri facias* to keep the lien in effect. *See id.* Thus the lien of *fieri facias* remains viable during the pendency of the bankruptcy proceedings.

■ Secondly, debtor raises the question as to whether creditor's lien ever covered the Gale and Spartabrook accounts. State law clearly provides that a lien of *fieri facias* on intangible property extends throughout the Commonwealth. 1950 Code of Virginia §·8.01–481 (Repl. vol. 1984). The manner in which the statute is worded indicates that a limitation to the coverage of the lien was not intended but rather that the lien was to be effective over as large a territory as possible. The fact remains, however, that the lien would not cover any property of the debtor located outside the Commonwealth.

Alternatively, the commencement of a case under section 301 of the Code creates the bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property" wherever that property is located. 11 U.S.C. § 541(a)(1). The trustee, as the representative of the estate under section 323(a), takes whatever interest the debtor has in property as of the commencement of the case. As a result, although the creditor has an interest superior to that of the trustee with respect to the debtor's property covered by the judicial lien obtained through the execution of the writ of *fieri facias*, the trustee's interest in debtor's property not properly covered by the lien as of the petition filing date is superior to that of the creditor. In other words, if the situs of the Gale and the Spartabrook accounts were in Maryland as of the filing of debtor's bankruptcy petition, the accounts would not be covered by creditor's lien and the trustee would have a superior interest in those accounts. Unfortunately, the record contains no information which would allow this Court to determine the situs of these accounts. If the parties are unable to determine the priority of their respective interests based on the foregoing findings, this Court will entertain arguments as to the situs of the accounts.

An appropriate Order will enter.

---

**4.** Defendant Spartabrook Construction Corporation ("Spartabrook") has remained aloof from the proceedings in this Court and in the state court, having failed to answer and having made no appearance in these proceedings. Thus, there is no indication that Spartabrook contests either the amount of or liability on its debt to debtor. As discussed previously, Gale Construction Company ("Gale") paid $3,800.00 to debtor in full satisfaction of the amount owing to debtor, evidencing no dispute over the amount of the account receivable or the liability of Gale.

**5.** *See* note 3 *supra*.