## CIRCUIT COURT OF FREDERICK COUNTY

Club Pro Golf Products, Inc.

v.

Joe R. Simpson

September 26, 1988

Case No. (Law) 87-124

By JUDGE ROBERT K. WOLTZ

For decision is a demurrer of the defendant (Simpson) to the amended motion for judgment of the plaintiff (Club Pro) and involves application of the law of sales under the Uniform Commercial Code (Title 8.2). According to the allegations of the motion, Club Pro is a distributor of golf products and Simpson is a golf professional at a golf club. The two have had previous dealings, and Simpson knew the established procedure of Club Pro in selling merchandise.

This procedure consisted in salesmen of Club Pro calling on customers and taking orders for merchandise, the merchandise being sent by Club Pro directly to the purchaser and payment being made by the purchaser directly to Club Pro. The salesmen did not carry merchandise for direct sales to customers nor did they receive the payment for merchandise sold.

A salesman of Club Pro, one Carl Gude, transmitted orders for certain merchandise to Club Pro for delivery to several fictitious purchasers. Club Pro sent the merchandise to the fictitious purchasers at their supposed addresses where it was picked up by Gude. Gude then sold the merchandise directly, approximately nineteen thousand dollars worth, to Simpson and retained the proceeds of

sale for himself. Club Pro alleges Gude "stole" the merchandise from it "with intent to defraud plaintiff" and as a result had no authority to transfer title to Simpson, and further, that the sale to Simpson was under circumstances to put him on notice that Gude did not have authority to sell this merchandise on behalf of Club Pro, and that Simpson in selling this merchandise has made a conversion of it to the injury of Club Pro.

The demurrer states that Gude was an agent of Club Pro which had clothed him with authority or apparent authority to sell its merchandise and that, in making the purchase from Gude, Simpson committed no wrong against Club Pro.

This problem in sales is controlled by Code § 8.2-403, the pertinent parts of which are as follows:

> (1) A purchaser of goods acquires all title which his transferor had or had power to transfer . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though
>
> (a) the transferor was deceived as to the identity of the purchaser or . . .
>
> (d) the delivery was procured through fraud punishable as larcenous under the criminal law.
>
> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Subsection 1 of the statute sets up a dichotomy between lack of title or void title, if it may be called such, and voidable title. As to the first, "One who has no title to personal property can transfer none. A buyer from such seller, even though he pays value in good faith without notice, does not acquire title against a rightful legal claimant." *First National Bank v. Johnson*, 183 Va. 227 (1944). This rule applies where the property has been stolen because of "the basic rule that title cannot be acquired to stolen property by dealings with the thief or his successors." *Cotton States Mutual Ins. Co. v. Bibbee*, 131 S.E.2d 745 (W. Va. 1963). This is a salutary rule to keep the channels of commerce from being flooded with stolen goods. This is a just rule. The owner of the stolen goods, other than their physical security while in his possession, has no means of protecting them against the depredations of a thief.

The law has made a conscious choice to protect the true owner in this situation at the risk of injury to the purchaser by the thief. The possible adverse results of such purchases are simply a loss society puts on the purchaser as a part of the risk of entering into business transactions. Unlike the true owner, a would-be purchaser has the possibility of protecting himself against loss resulting from the purchase. He may make inquiry as to the source of the supposed owner's title, his means of obtaining possession, comparison of the offering price with market value, and he may consider other circumstances, the whole of which might satisfy the potential purchaser for his own safety to avoid the transaction.

The law makes a different choice where the owner loses control of his property not through theft but is deluded through some fraudulent means into giving up the goods. Though such frauds may be larcenous in nature and the perpetrator by statute "deemed" guilty of larceny, e.g., false pretense or token, § 18.2-178, these frauds are not larceny. *See* § 8.2-403 Official Comment.

By directly or indirectly parting with his goods, albeit as a result of fraud or deceit, an owner has voluntarily put it in the power of the dishonest person to place these goods in the stream of commerce. This owner has opportunity to protect himself to a much greater extent than the victim of a theft. More than mere physical security

of his goods, the owner can protect against fraudulent loss of them by many means of internal and external control. Such an owner is further protected by the fact that both the perpetrator of the fraud and, of greater practical importance, his successors in interest obtain only voidable title. By this additional protection, the law affords the owner the opportunity to avoid the title vested either in the defrauder or in the purchaser from him under certain circumstances.

The pre-eminent importance of the free flow of commerce dictates this different rule respecting subsequent ownership of goods of which the true owner has been defrauded from the rule appertaining to thefts. The matter was well put approaching two hundred years ago in *Wilson v. Rucker*, 5 Va. (1 Call) 500 (1799):

> It is certainly a general rule that the title to personal goods will not pass without the assent of the owner; but this rule has admitted of certain exceptions, for the benefit of commerce and on the principle of permitting a particular injury, rather than a general inconvenience.

The amended motion for judgment alleges actions of Gude amounting to fraud and states that he "stole the merchandise from Plaintiff with the intent to defraud Plaintiff." Further alleged is that the sale was under circumstances putting Simpson on notice of a dishonest transaction. The demurrer is sustained with regard to any allegations of theft of the goods by Gude from Club Pro as the motion for judgment expressly alleges actions by Gude which while they may have been "larcenous" were not "larceny." Consequently, Gude was not without title but had voidable title. The demurrer is overruled with respect to the allegations of fraudulent actions on the part of Gude in acquiring the property and his sale of it to Simpson. The motion sets forth sufficient under Section 8.2-403(1) to create only a voidable title in Gude and in his successor Simpson.

In his brief, Simpson supports his demurrer by arguments concerning Club Pro "entrusting" the subject goods to Gude under the provisions of subsections (2) and (3). In brief, the nature of these arguments is to the effect

that the motion for judgment fails to make certain necessary allegations, e.g., that Gude was not a merchant and was not entrusted with possession. While these allegations may have been appropriate to the motion for judgment, the omission of them does not make it subject to demurrer as essentially such points are matters of defense. The demurrer is overruled in that regard.